· The Governor, for the use of William Thomas, Trustee, etc.,

*v.*

Clark B. Lagow *et al.*

1. Surety — *extent of liability.* The general rule is, that the undertakings of a surety are not to be extended beyond the fair scope of the terms expressed, but are to be strictly interpreted.

2. So, where, by an act of the legislature, assignees were appointed to wind up the affairs of the Bank of Illinois, at Shawneetown, and were required to give bond, and allowed four years in which to discharge the duties assigned them under the act, and the time of final settlement was, by the legislature,

afterward extended two years, it was *held*, that this extension of the time without the assent of the sureties, operated as a discharge, and that the sureties could not be held liable for the acts of their principal after the expiration of the four years.

3. But, where, by the act appointing the assignees, it was made their duty to meet at the bank on a day named in each year, to cancel and burn all notes and certificates of indebtedness redeemed and canceled, and make report to the governor of the amount of assets remaining in their hands, and of the notes and certificates canceled; and where a decree in the United States Circuit Court required such assignees to account and pay over to a trustee appointed, the amount found to be due from them as assignees, and the assignees neglected and failed to perform any of said duties,—it was *held*, that the sureties of the assignees were liable for the amounts shown to have been by the assignees received and not paid over, during the four years. It was competent for the sureties to have discharged the liabilities and to have had recourse upon their principals.

4. PLEA— *when demurrable.* It is a well established rule of pleading, that if facts are alleged in a special plea which can be given in evidence under the general issue, such a plea is obnoxious to a special demurrer.

5. So, where the plea of *non est factum*, not sworn to, was interposed in an action of debt, being the general issue, it put in issue every fact in relation to the execution of the bond, except the fact of the signature of the pleader, and therefore the facts that other signatures either as sureties or witnesses, were wrongfully placed on the bond, after that of the pleader, could properly be given in evidence under such a plea; and hence, a special plea alleging these facts is bad on special demurrer.

APPEAL from the Circuit Court of Edgar county; the Hon. JAMES STEELE, Judge, presiding.

The opinion of the court contains a full statement of the case.

Messrs. WILLIAM THOMAS and WILLIAM H. HERNDON, for the appellants.

Messrs. ALLEN & SCHOLFIELD, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of debt, originally brought in the Crawford Circuit Court, and by change of venue taken to Edgar county, on a bond executed by Ebenezer Z. Ryan as principal, and Wilson Lagow, deceased, security, to the governor of the

State, in the penalty of fifty thousand dollars, and dated March 27, 1845.

The condition of the bond recites that Ryan, by an act of the legislature, entitled "an act supplemental to an act to reduce the public debt one million of dollars, and to put the Bank of Illinois into liquidation," had been appointed one of the assignees to close the business of that bank. Now, if the said Ryan, as assignee, as aforesaid, shall faithfully discharge the duties enjoined on him by the provisions of said act, then the obligation was to be void, otherwise to remain in full force and virtue.

The action is against Clark B. Lagow, and David H. Lagow, the first named the executor, and both the devisees of Wilson Lagow, deceased, under his last will and testament.

The breaches assigned in the declaration are, that Ryan has not faithfully discharged the duties enjoined on him as assignee, according to the provisions of the act of the legislature, under which he was appointed, but has wholly failed therein in these particulars: first, that at the December Term, 1850, of the Circuit Court of the United States for the district of Illinois, that court made and entered a decree in a cause therein pending between the Bank of the State of Illinois, as complainant, and Albert G. Caldwell, said Ebenezer Z. Ryan, David A. Smith, and George A. Dunlap, assignees of the Bank of Illinois, as defendants, appointing William Thomas, for whose use this suit is brought, trustee of the Bank of Illinois, in place of the assignees appointed by the act of the legislature; and that at the December Term, 1859, of said court a decree was entered, requiring Ryan to pay over to Thomas as such trustee, the sum of $45,467.29, the amount found due from him as such assignee to the trust fund, of which Ryan had notice, but which he has not paid over but has wholly failed and refused.

Second, that during the years 1845, '46, '47 and '48, Ryan collected and received of the bank, bills and certificates of the bank $50,000, to wit: In 1845, $16,000; in 1846, $14,600; in 1847, $15,000, and in 1848, $4,400; that it was the duty of Ryan, on the first Monday in December, in each of those

years to have met the other assignees of the bank at Shawnee-town for the purpose of canceling and burning all notes and certificates, redeemed, and of making a full report to the governor of the amount of assets in his hands, and of the notes and certificates redeemed and canceled, and it was also the duty of said Ryan to faithfully account for and pay over to the trustees all the moneys and evidences of indebtedness which came to his hands as such assignee, of which he received the sums aforesaid; yet, Ryan did not, on the first Monday of December, of each of the years aforesaid, meet the other assignees of the bank at Shawneetown, and burn and cancel all notes and certificates received by him, and make full report to the governor of the amount of assets in his hands, and of the notes and certificates canceled; nor has the said Ryan paid over to the trustee all the moneys and evidences of indebtedness which came to his hands. Third, that at the June Term, 1851, of the Circuit Court of the United States for the district of Illinois, William Thomas was appointed trustee of the bank, to execute the trusts created by and existing under the acts of the general assembly, authorizing the appointment and prescribing the duties of said assignees, and requiring the said assignees severally to pay over to said trustee all moneys collected by them, and to deliver to said trustee all the bills and certificates of said bank in their hands. And, at the December Term, 1859, of said court, a decree was entered, requiring Ryan to pay to the trustee $45,467.29, the amount found to be due from Ryan as such assignee on account of assets which had come to his hands. Fourth, it was the duty of Ryan, on the first Monday of December of each year after his appointment, to meet with the other assignees at Shawneetown for the purpose of canceling and burning all notes and certificates redeemed and canceled, and making a full report to the governor of the amount of assets in his hands, and of the notes and certificates canceled; yet he failed to meet with the other assignees at Shawneetown on the first Monday in December in each year, or any year, after his appointment for the purposes aforesaid; nor did he at any time make a full

report to the governor of the amount of assets in his hands, and of the notes and certificates canceled, as was his duty to have done. Fifth, that, during the time of the action of Ryan as assignee, he collected and received, as such assignee, $40,000 of the notes of the bank, and $45,000 of the certificates of the bank, which it was his duty to have canceled and destroyed, and to have reported the same to the Governor; yet, he did not cancel and destroy the notes and certificates so received, but converted the same to his own use. The sixth breach sets out the proceeding in the United States Court, the appointment of a trustee, and the decree requiring the assignee to account, and then avers, that a further decree was entered, requiring Ryan to pay over to the trustee the amount found to be due from him as such assignee.

It is then averred, that Ryan had not paid to the trustee the amount found to be due as aforesaid, and that, by reason thereof the defendants became liable to pay the $50,000, and, that they had not paid the same, etc.

The defendant appeared and filed twelve pleas, which follow:

1. *Non est factum* not sworn to.

2. *Nil debet.*

3. That the bond was signed by all the obligors except James Nabb, and delivered to Ryan to be delivered to the Governor; that Ryan procured the signature of Nabb to the bond without the knowledge or consent of the other obligors, thereby materially altering the bond, and, therefore, the bond is not the act and deed of the obligors.

The fourth plea is the same in substance as the third plea.

5. That by the law Ryan was bound to wind up the bank in four years, and that the creditors and stockholders of the bank obtained an act of the legislature extending the time, without the knowledge or consent of the securities, and thereby released them from liability.

6. That Ryan was bound by the law to wind up the affairs of the bank in four years, and Ryan procured an act of the legislature extending the time, without the knowledge or consent of the securities, and that they are thereby released, etc.

7. The same in substance as fifth and sixth.

8. That while the suit was pending in the United States Court, as stated in the declaration, the bill was amended, making the securities of Ryan parties, that Jesse K. Dubois, one of the securities, bargained with William B. Warren, agent for the plaintiff, that in consideration of advancing a *pro rata* part of the liability of said Ryan, he should not be proceeded against any further, and, therefore, all the obligations are released.

9. After the bond was signed it was materially altered in this: That Ryan procured Hull and Thorn to subscribe their names thereto as witnesses, without the knowledge or consent of the obligors, whereby the bond became and was void.

10. That Ryan entered into a written contract with James Dunlap and William B. Warren, whereby Ryan agreed to indorse upon an account, stated by Warren as mentioned by plaintiff in the fourth assignment of breaches of condition of the bond, an admission of the correctness of said account, and also authorize the confession of judgment in favor of the trustee of the bank, for the sum stated by Warren, they, said Dunlap and Warren, agreed that neither Ryan nor his securities ever should be sued on said bond, which agreement was indorsed and approved by said Thomas, trustee, etc., that Ryan, accordingly, indorsed the account and authorized judgment, whereby the obligors were released, etc.

11. That by an agreement in writing with James Dunlap and William B. Warren, Ryan agreed to, and did, indorse upon an account, stated by said Warren as special master, an admission of the correctness of said account, and agreed that judgment should be entered against him for the amount appearing to be due by said account, and also agreed to surrender to said trustee certain property in Lawrenceville, of which he was in possession; the said Dunlap and Warren agreed that no suit should ever be brought against said Ryan or his securities aforesaid, that said Ryan did so indorse on the account aforesaid, and did deliver to said Thomas the property aforesaid, whereby

the obligors aforesaid became and were released from all liability on said bond.

The twelfth is a plea of the statute of limitations, that the causes of action did not accrue within sixteen years before the commencement of suit, on which issue was taken.

A demurrer was sustained to the third, fourth, and ninth pleas, and overruled as to the sixth, seventh, eighth, tenth and eleventh. Issues of fact were made up on the first, second and twelfth pleas.

The plaintiff abided by his demurrer, whereupon the court gave judgment in bar of the action.

To reverse this judgment the record is brought here by appeal, and the only error assigned is this decision on the demurrers.

By agreement, the appellees have assigned cross errors.

The principal point made on the record is the one raised by the fifth and sixth pleas.

A reference to the act of 1845, under which the Bank of Illinois was put in liquidation, and Ryan appointed assignee, shows, by section 17, that the assignees had four years from the passage of the act in which to make a final settlement of the affairs of the bank, and the debtors of the bank were allowed the same time in which to pay their debts to the bank, by paying them in four equal annual installments with six per cent interest, with good and approved security.

The eighth section required the assignees to meet at Shawneetown, on the first Monday of December of each year, for the purpose of burning and canceling notes and certificates of the bank, and to make reports to the governor, and required three assignees to constitute a quorum for the purpose. Section 15 authorized the assignees to make such compromises and settlements as they might deem most advantageous to the bank; and by the act the assignees were clothed with full power, and were required to collect all the debts due the bank, pay all its liabilities, and finally close up its affairs, and, as we have seen, four years were allowed within which to perform these duties.

All the real estate of the bank was assigned to the assignees jointly, and the personal estate, rights, and credits, and debts of every kind due the bank at Shawneetown, and its branch at Lawrenceville, were assigned to Caldwell and Ryan. Bond to the governor was required in the sum of $50,000 for each assignee, conditioned for the faithful discharge of the duties of such assignee, and faithfully to account for, and pay over all the moneys and evidence of indebtedness, which should come to the hands of each assignee under the provisions of the act.

In 1849, on the 10th of February, the act was passed extending the time to the assignees for liquidating the affairs of the bank, until the 1st day of January, 1851, the second section of which authorized the assignees to sue for and recover debts due the bank in their own names, and the third section provided for maintaining pending suits in their names.

The question is presented by the fifth and sixth pleas, how were the rights of these sureties affected by this extension of time?

By the act of 1845, under which the bond in suit was executed, the sureties who executed it incurred a liability to endure four years and no longer. Within that time all the affairs of the bank were to be closed up, and for this they undertook, and they can be held liable for no more than Ryan was required to do by that act.

All the cases show that the undertaking of a surety is to receive a strict interpretation and is not to be extended beyond the fair scope of its terms. To the extent, and in the manner and under the circumstances, pointed out in his obligation, he is bound, and no further. *Miller* v. *Stewart*, 7 Wheat. 703.

This court held, in the case of *Davis et al.* v. *The People*, 1 Gilm. 409, that, where an act of the legislature gave a collector of taxes longer time in which to make payment than he had by the law in existence when he executed his official bond with sureties, the sureties were fully discharged if the act was passed without their assent.

That the act of 1849, was passed without the assent of the

defendants is averred in the plea and admitted by the demurrer.

In that case, the court say the legislature had the undoubted right to pass the act, and it was binding on the State, and, while it was operative, no suit could have been prosecuted against the collector, and, during that period, the sureties had no right to make payment to the county and resort to their principal for re-imbursement. A surety is not permitted to discharge the debt of his principal until he is in default and can be legally called on for payment. The act in question materially changed the original contract to which the sureties were parties, and, if passed without their assent, fully discharged them from all liability on the bond.

The same was held in the case of *The People* v. *McHatton et al.*, 2 Gilm. 638, which was a suit on the official bond of the sheriff, who had procured an extension of time to pay over his collections, without the consent of the sureties. The same doctrine was held in *Waters et al.* v. *Simpson et al.*, id. 570.

It is a familiar principle that the contract of a surety is to be construed strictly, and he is not to be held responsible beyond the precise terms of his undertaking. His risk is not to be increased, or his responsibility extended, without his assent. Ib. 574.

Here the sureties undertook that Ryan would perform his duties faithfully for four years, but not for six years, to which the time was extended for him to settle up the affairs of the bank.

But there is a breach assigned in the declaration which does not seem, in the opinion of a majority of the court, to be affected by the act of 1849, as it is alleged to have occurred previous to that time, and for which these sureties were responsible.

It is alleged in the second breach, that, during the years 1845, 1846, 1847 and 1848, Ryan received of the bank in bills and certificates $50,000 (specifying the amount received in each year), and that he did not meet the other assignees on the first Monday of December of each year, and burn and cancel them, and make report to the governor of the amount of assets in his

hands, and of the notes and certificates redeemed and canceled, and that he had not paid over to the trustee all the moneys and evidences of indebtedness which came to his hands as assignee, being the sum aforementioned.

For this breach a majority of the court hold that a suit might have been maintained upon the bond at any time, notwithstanding the extension of time, after Ryan failed and neglected to burn and cancel the notes and certificates in his hands. The liability had attached to the sureties for this breach, and was not enlarged by the act of 1849. They could have paid off the liability and had recourse upon Ryan for re-imbursement.

For breaches occurring after the passage of that act, we are all of opinion the sureties are not liable.

These considerations dispose of the principal points raised in the case.

As to the cross errors, which call in question the decision of the court sustaining plaintiff's special demurrer to the third, fourth and ninth pleas, it is only necessary to say that the general issue, *non est factum*, had been pleaded, and, though not sworn to, it put in issue every fact in relation to the execution of the bond, except the fact of the signature of the defendants, which could only be denied by such a plea sworn to.

By well established rules of pleading, if facts are alleged in a special plea, which can be given in evidence under the general issue, such plea is obnoxious to a special demurrer. As to the third and fourth pleas, if the signature of James Noble was wrongfully placed to the bond after its execution by the defendant's ancestor, it was not his bond, and that fact was met by the plea of *non est factum*. *Longley* v. *Norval*, 1 Scam. 389.

The ninth plea alleged, that the bond, after being signed by the obligors, was materially altered in this : that Ryan procured Hall and Thorn to subscribe their names thereto as witnesses, without the knowledge or consent of the obligors, whereby the bond became and was void. All this could be given in evidence under the general issue if it amounted to a defense, and therefore this plea was obnoxious to a special demurrer. But the plea itself fails to show under what circumstances they

subscribed their names as witnesses, and to whose signatures. It might be, that these witnesses were present at the execution of the bond, and attested it thereafter. If so, there could be nothing improper in this. It was no alteration of the bond, nor did it affect in any way the liability of the sureties.

It is contended by appellant, that the appointment of Ryan was without limit as to time, and that, upon his acceptance and entering on the duties, he would continue to be assignee, until the final settlement of the affairs of the bank, but the act itself provided this settlement should be fully completed in four years, and if completed his functions ceased. The trustees undertook for that period of time and no longer.

Again, it is said by appellant, that this is not a case in which the State alone is interested; that the bond was executed as a security to all parties interested as creditors of the bank, and, if the State alone was the party, still the act of 1849 would not operate as a release; and reference is made to the case of *The People* v. *Leet*, 13 Ill. 268, in which the cases of *The Governor* v. *Ridgeway*, 12 id. 15, and *Compher* v. *The People*, id. 294, are cited in the opinion. The substance of these cases is, that the sureties of an officer upon his official bond, conditioned for the faithful discharge of the duties of the office, are liable for the performance of all duties imposed upon him, which are within the scope of his office, whether such duties are imposed by laws passed before or after the execution of the obligation. Parties who go security on bonds of this character, do so with the full knowledge and expectation that the revenue laws will be changed, and the duties of collectors altered as the public interest may require, and they have no right to complain of any alteration in the laws, not materially changing the character of the duties of their principal, especially when such alterations are in no wise prejudicial to their interests.

We do not perceive the similitude of the cases. This case is governed by the principles announced in *Davis* v. *The People*, *The People* v. *McHatton* and *Waters* v. *Simpson et al.*, before referred to.

The act of 1849 enlarged the responsibility of the sureties

two years beyond the time for which they had undertaken for Ryan's fidelity. It is in vain to say such extension was not prejudicial to their interests, compelling them to answer for delinquencies which occurred after the four years had expired.

It is urged by appellant, upon the question made by the pleas averring arrangements made by Ryan and Dubois with the trustee operating as a release of the obligors, that if the statements contained in those pleas were true, the trustee had no right to make them nor any other to the prejudice of the trust fund, and reference is made to the cases of *Thomas* v. *Sloo*, 15 Ill. 70, and *Same* v. *Bowman and Harrow*, 29 id. 426.

By the act of 1845, authority was conferred upon the assignees to make such compromises and settlements as they might deem most advantageous to the bank. The demurrer to those pleas (tenth and eleventh) admits the fact, that the compromises were made, but we are not of opinion this power extended so far as to release the sureties of the assignee. Compromises and settlements of indebtedness in the usual way, and according to the common usage in such cases, was the extent of the power conferred, and should be confined to that extent. The whole purpose of the act would be defeated by giving it a construction so broad as is set up. It could not have been the intention of the legislature thus to defeat one of the principal objects of the act, and that was to secure the creditors in the faithful collection and application of the assets of the bank. This is the reason such heavy security was required of each assignee.

Upon the point made by appellees, that the signature of James Nabb was obtained to the bond after their testator had signed it, we are of opinion it did not avoid the bond if done before its delivery to the governor. Before its delivery, Ryan could have procured as many names as he chose to his bond. *Gardner* v. *Walsh*, 85 English Com. Law, 82; *Foy* v. *Blackstone*, 31 Ill. 538; *Hurst* v. *Weir*, 29 id. 85.

We have now examined and disposed of the principal points raised on this record, and, for the reasons given, the judgment of the Circuit Court must be reversed and the cause remanded,

with leave to both parties to amend their pleadings, should they desire so to do, and for further proceedings consistent with this opinion.

*Judgment reversed.*