STANDARD UNDERGROUND CABLE COMPANY, Respondent, *v.* HARRY C. STONE, Appellant.

*Bond — signed, after its execution by all the parties named therein, by a third person — it is not thereby rendered unenforcible.*

A bond, executed pursuant to an agreement, by which it was required to be furnished, to secure the payment of the purchase price of goods, after being signed by all the obligors named in the body of the bond, was, before delivery and without any knowledge on the part of the obligee or of one of the sureties thereto, signed by another party, who, although not named in the body of the bond, was named in the agreement pursuant to which it was given.

*Held,* that the effect of such additional signature was not to alter the contract of the obligors named in the bond, but to create a separate guaranty for the payment of the sum of money secured thereby;

That, even if it effected an alteration in the contract, it was not a material one, as the liability of the obligors named in the bond was in no way increased thereby, and the alteration having been made without the knowledge of the obligee and by one standing in the position of a stranger to those claiming under it, the altered instrument might be enforced according to its original terms.

APPEAL by the defendant, Harry C. Stone, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of

the clerk of the county of Madison on the 18th day of April, 1898, upon the decision of the court rendered after a trial at the Madison Trial Term before the court without a jury.

The Electrical Supply and Construction Company, of Pittsburg, Penn., in September, 1895, desiring to obtain goods from plaintiff on credit, it was mutually agreed that the former should furnish to the latter a bond to secure it for goods thereafter sold and delivered, with W. H. Stone, its treasurer, H. W. Doubleday, its president, and the appellant, Harry C. Stone, as sureties. The bond was accordingly drawn and executed by the appellant, and sent by him to W. H. Stone, who executed it for the Electrical Supply and Construction Company as its treasurer and individually, and delivered it to Mr. Doubleday. The latter signed his name to the instrument under the names of the obligors, and delivered it to the plaintiff. It is claimed by the appellant that the addition of the signature of Mr. Doubleday to the paper after the defendant executed it, without his knowledge or consent, was a material alteration of the instrument, and rendered it inoperative as against him.

The bond named as obligors the Electrical Supply and Construction Company of Pittsburg, Penn., principal, and W. H. Stone, of Pittsburg, Penn., and H. C. Stone, of Oneida, N. Y., as sureties. It is not claimed that any alteration has been made in the body of the instrument. The signatures to the bond, as introduced in evidence, are as follows :

" ELECTRICAL SUPPLY AND CONSTRUCTION
    " COMPANY,
          By W. H. STONE, *Treasurer.*
                                        *Principals.*
" W. H. STONE, } *Sureties.*
" H. C. STONE,
" H. M. DOUBLEDAY."

The only alteration made was the signing of the paper by Mr. Doubleday after it had been executed by the obligors named in the instrument, under their signatures.

*E. L. Hunt,* for the appellant.

*Joseph Beal,* for the respondent.

PUTNAM, J.:

When the bond on which the plaintiff sought to maintain the action came into the hands of Mr. Doubleday, president of the principal obligor therein, it was a completely executed instrument. Those named therein, and who, by its terms, were bound by it, had affixed their signatures thereto. But Mr. Doubleday evidently signed his name thereto with intent to become an additional surety. Under the original arrangement between the plaintiff and the Electrical Supply and Construction Company he was to become such. It has been held that one executing an instrument, signed by others who are named as parties to it, thereby becomes a party to the instrument and is bound by it, although not named in the body of the writing. (4 Am. & Eng. Ency. of Law [2d ed.], 624; *Ex parte Fulton*, 7 Cow. 484; *Perkins* v. *Goodman*, 21 Barb. 218; *Thomas* v. *Gumaer*, 7 Wend. 43; *Parks* v. *Brinkerhoff*, 2 Hill, 663; *Thomas* v. *Hubbell*, 18 Barb. 13.)

Under the authorities, Mr. Doubleday, by affixing his signature under those of the obligors named in the bond, became, as to the plaintiff, a party to the instrument, and bound by it as much as if he had been named in the body of the paper. But we doubt whether the addition of the signature of Mr. Doubleday to the paper, under the circumstances, effected an alteration thereof. By affixing his signature to the paper he did not change the contract between the appellant and the plaintiff; he rather entered into a new and separate contract with the plaintiff. It was as if he had written over his signature, "I also agree to be a surety in addition to the obligors named in the foregoing paper."

In *McCaughey* v. *Smith* (27 N. Y. 39) the following facts appeared: One Hall made a promissory note for $200, payable to the order of Origen Smith, who indorsed it, and Hall thereupon delivered it to the plaintiff for goods sold to him and one Hungerford. Afterwards, at the request of the plaintiff, Hungerford affixed his signature to the note over that of Hall in the body of the instrument. The indorser, Smith, defended the action, claiming that the addition of Hungerford's name to the note was a material alteration. It was held that although Hungerford signed the note as maker, he was in fact a surety or guarantor, and that his signature did not effect an alteration of the instrument; that he made a

new contract with the holder of the note, as security for the maker, after the contract with the maker was completed. It is true that in the case cited the note had been delivered before the additional surety had been obtained. But in this case the bond had been signed by every party named in it and was a valid executed paper, except that it had not been delivered when Mr. Doubleday affixed his signature thereto. We think the effect of such a signature was not to alter the contract of the obligors named in the bond, but to create a separate guaranty for the payment of the sum secured by the paper.

If we assume, however, that the act of Mr. Doubleday in affixing his signature to the paper effected an alteration therein, that alteration cannot be regarded as to the appellant as a material one. His liability on the bond was not in any way increased thereby. Mr. Doubleday became merely an additional surety. His signature was a benefit rather than an injury to the appellant. It might be otherwise where an alteration to an instrument increases the liability of a surety, as, for instance, if, after he signs a bond, the amount thereof should be increased, or if the name of another surety on the paper when he executed it, should be erased. In such a case the alteration would be material, because increasing the liability of the surety. The contract would not be the same that he executed. By such changes a new and substituted contract would take the place of the one to which the surety had affixed his name. But here the liability of the appellant has not been in any manner increased by Mr. Doubleday's signature on the bond under his own. The appellant agreed to be liable as a surety to the plaintiff for goods thereafter sold to the Electrical Supply and Construction Company, and that liability was not increased or affected by the fact that Mr. Doubleday afterwards voluntarily affixed his signature to the bond.

It has been held repeatedly that the signing of a promissory note by an additional surety is not a material alteration and does not render it invalid as to those who had previously signed it, although such signing was without their knowledge or consent. (*Mersman v. Werges*, 112 U. S. 139; *Ex parte Yates.— Re Smith*, 2 De G. & J. 191; *Brownell* v. *Winnie*, 29 N. Y. 400; *Denick* v. *Hubbard*, 27 Hun, 347, and authorities cited in the opinion; *Miller* v.

*Finley,* 26 Mich. 249; *Stone* v. *White,* 8 Gray, 589.) The principle established in the authorities last cited applies as well to a bond as to a promissory note.

In the authorities referred to the alteration was made at the request or with the knowledge or consent of the payee of the note, but, in the case under consideration, the addition of Mr. Doubleday's name was made before delivery, and without any knowledge on the part of the plaintiff that Mr. Doubleday's name was affixed to the paper without the consent of the appellant. The bond was received by the appellant in good faith, pursuant to the arrangement of the parties, and, on the faith of it, the plaintiff sold and delivered the goods, to recover the value of which this action was brought. If the addition of the signature of Mr. Doubleday to the paper can be deemed an alteration, it was caused by the principal obligor or by Mr. Doubleday without the knowledge of the plaintiff. It has been held that an alteration is immaterial when made in a paper by parties standing in the position of a stranger to those claiming under it, and that in such case the altered instrument may be enforced according to its original terms. (*Casoni* v. *Jerome,* 58 N. Y. 315, 321; *Town of Solon* v. *Williamsburgh Savings Bank,* 114 id. 122, 134.) So the alteration of the paper in question by the addition of Mr. Doubleday's name thereto, made without the knowledge or procurement of the plaintiff, must be deemed as an alteration made by a stranger. The plaintiff had no part in the act; he did not know of or authorize it. As far as he is concerned, the alteration was as if the act of a stranger.

Again, as above suggested, the signature of Mr. Doubleday to the bond was affixed before delivery of the paper. In *Hall* v. *Weaver* (34 Fed. Rep. 104, 110) the following doctrine is stated: "No alteration of a writing before execution, which includes delivery, affects its character or value as an instrument of evidence. Alterations before delivery are presumed to be made with mutual consent. The very act of delivering and receiving the writing implies so much. This is the doctrine of the common law. 'The period after which alterations not mutual are fatal is that of the final delivery of the document.' * * * Weaver and his co-obligors who signed this bond and left it with the principal therein to deliver to the plaintiffs, thereby constituted the latter their agent for that purpose.

(*Belloni* v. *Freeborn*, 63 N. Y. 389.) Before the delivery was made this alteration took place. It consisted of an attestation which, for aught that appeared, was authorized and genuine. So far as the plaintiffs are concerned it was the act of Weaver and his co-sureties acting through the agent and co-obligor, Owens, prior to the delivery to them of the writing." (See, also, *Nash* v. *Fugate*, 34 Am. Rep. 780; *Cutler* v. *Roberts*, 29 id. 371–377.) It is not necessary to hold, as in *Hall* v. *Weaver* (*supra*), that no alteration before the delivery of an instrument affects its value. If an alteration should materially change an instrument signed, although made before delivery, we are not prepared to hold that the surety would remain liable. But we concur in the doctrine stated in the case where the alteration made is not material, and when applied to a case like the one under consideration, where the only change in the instrument was the signature thereto of an additional surety.

In *The Governor, etc.,* v. *Lagow* (43 Ill. 134–145) it was said: "Upon the point made by appellees, that the signature of James Nabb was obtained to the bond after their testator had signed it, we are of opinion it did not avoid the bond if done before its delivery to the governor. Before its delivery, Ryan could have procured as many names as he chose to his bond."

When the appellant affixed his signature to the bond in question as a surety and sent it to his principal, the paper was not completed. It was to be executed by the corporation and by his brother and delivered to the plaintiff. We see no reason to doubt that the principal obligor, to whom the appellant had forwarded the unexecuted paper for completion and delivery, had power to obtain an additional surety thereto.

Under the evidence in the case the court was justified in determining that there was no valid extension of the time of the payment of the account of the plaintiff against the Electrical Supply and Construction Company, by which the defendant was discharged from liability.

We find no rulings of the trial judge that should lead us to grant a new trial.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.