AMERICAN CHAIN COMPANY, INC., Plaintiff, *v.* ARROW GRIP MANUFACTURING COMPANY, INC., and Others, Defendants.

Supreme Court, Warren County, June 10, 1929.

*Brackett & Eddy* [*Spencer B. Eddy* of counsel], for the plaintiff.

*William P. Maloney*, for the defendants Grace Underwood Adriance and the New York Trust Company, as executors of George F. Underwood, deceased.

*Williams, Imrie & Boice* [*Henry W. Williams* and *Harry A. Reoux* of counsel], for the defendants Albert L. Emerson and Louis E. Reoux, as executors of Louis W. Emerson, deceased.

*Edwards, O'Loughlin & George* [*David G. George* of counsel], for the defendants James K. Welch and Emma L. Gelshenen, as executors of William H. Gelshenen, deceased.

*John H. Barker,* for the defendants Tait and Burns.

HEFFERNAN, J. This is an action by plaintiff to recover from defendants the sum of $34,556.74, being an unpaid balance of an indebtedness of defendant company to plaintiff for merchandise. The liability of defendants, except defendant company, is predicated upon an agreement of guaranty. Prior to 1923, defendant corporation purchased chains from plaintiff, the general terms being bill of lading with draft attached. Evidently for the purpose of securing more favorable terms of credit, the parties entered into a tripartite agreement on May 1, 1923, in which the plaintiff is described as the manufacturer, the defendant company as the retailer and the defendants Tait and Burns as guarantors. Immediately following the names of the two designated guarantors, blank spaces were left, obviously for the insertion of other names. No additional names were ever inserted. Although not named in the instrument the agreement was executed by George F. Underwood, Louis W. Emerson and William H. Gelshenen, as guarantors. At the time the agreement was executed, the guarantors were stockholders and directors of the defendant corporation.

The instrument is not under seal and recites a nominal consideration of one dollar. It provides, in substance, that the manufacturer shall supply the retailer with merchandise at prices quoted upon agreed terms of payment up to a total amount of $54,600 and that the retailer shall pay the manufacturer for goods so supplied. The guarantors bind themselves to pay to the manufacturer during the continuancy of the agreement for goods supplied to the retailer. It is specifically agreed that the guaranty shall be deemed to be a continuing one, provided, however, that the guarantors shall not be required to pay on any balance at any one time due from the retailer to the manufacturer an amount in excess of $54,600. Provision is also made whereby any of the parties may terminate the agreement at any time by giving ten days' written notice to each of the other parties. The concluding paragraph of the agreement which is the basis of this litigation is as follows: " This agreement shall be enforceable by and against the respective administrators, executors, successors and assigns of the parties hereto, and the death of the guarantors shall not terminate the liability of such guarantors under this agreement, except by the giving of notice of termination of this agreement by the repre-

sentatives of such deceased in the manner hereinbefore provided with respect to the termination of this agreement."

This guaranty is absolute and not conditional. The guarantors undertake unconditionally that the principal debtor will pay. It is concurrent with and is a part of the instrument creating the principal obligation. The only limitation contained in this instrument is as to the total amount of liability and the right to terminate upon giving notice. The limitation mentioned has reference to the amount of the guarantors' liability and not to the amount of dealing between the principal and the guarantor. It is not limited to a single transaction but contemplates a future course of dealing covering a series of transactions. Its purpose evidently was to give a standing credit to the defendant company to be used from time to time. The evidence shows that the aggregate purchases of the principal debtor far exceeded the designated limit.

Underwood died in 1923, and Gelshenen and Emerson in 1924. All died testate and their wills have been duly probated and in each instance notice to creditors was published according to law. Their estates have been fully administered and distribution of the assets made to those entitled thereto. All the decedents died long prior to the ordering or delivering of any of the merchandise for the purchase of which this action is brought. The representatives of the respective testators had no knowledge of the existence of the plaintiff's claim until subsequently to January, 1927. Plaintiff's claim was never filed with the legal representatives of these estates. The evidence fails to show that plaintiff acquired actual knowledge of the deaths of these guarantors until shortly prior to the institution of this suit. No notice was ever served on plaintiff or its officers. terminating liability under the guaranty until about March 1, 1928.

The goods involved in this suit were furnished to defendant company during the years 1927 and 1928. In fact the proof shows that early in the year 1928, a new corporation called the " Argrip Chain Company " was organized for the purpose of conducting the manufacturing operations formerly conducted by the defendant company, and the latter company thereupon ceased to operate. The course of dealing pursued thereafter was to order from the plaintiff in the name of defendant company chain, which, as it was received from plaintiff by defendant company, was turned over to the new corporation for its use. There is nothing to show that this was done with plaintiff's knowledge.

Summary judgments have been entered against defendant company and the defendants Tait and Burns, the two surviving guarantors.

The answers of the defendants are general denials. Their counsel

also urge that the agreement of guaranty is not valid as to the guarantors not named in the instrument itself, that the claim is unenforcible for indefiniteness, and that it was revoked by the deaths of the guarantors.

It seems to me that the failure to name all the guarantors in the body of the instrument is of no importance. It is not disputed that the guarantors affixed their names to the contract with the intention to sign the same. That being so, they thereby became parties to it and are bound by its provisions although not named in the body of the writing. (*Standard Underground Cable Co.* v. *Stone*, 35 App. Div. 62; *Esselstyn* v. *McDonald*, 98 id. 197.)

The important question to be decided in this case is whether the contract, so far as the liability of the decedents is concerned, was revoked by death. There is no parallel case in this State nor is the language contained in the instrument under consideration substantially identical with that used in any of the cases arising in other jurisdictions. It is distinguishable in that it provides that it shall be enforcible by and against the respective administrators, executors, successors and assigns of the parties thereto and that the death of the guarantors shall not terminate their liability. The mere fact, however, that it purports to bind the representatives of the guarantors does not impose any greater obligation. The presumption is, in the absence of express words to the contrary, that every person who makes a contract intends to bind his executors and administrators. (*Chamberlain* v. *Dunlop*, 126 N. Y. 45; *Kernochan* v. *Murray*, 111 id. 306.)

The construction of the instrument is involved. It is well settled that after the intention of the parties or the scope of the guarantor's undertaking has been determined by the ordinary rules of construction, either from the instrument itself in which it is clearly expressed or from the instrument and the surrounding circumstances, the rule of *strictissimi juris* applies, that is, that the guarantor is entitled to have his undertaking as thus determined strictly construed and that it cannot be extended by construction or implication beyond the precise terms of his contract; and in this respect a guarantor is said to be, like a surety, a favorite of the law. (28 C. J. 935, 936.)

The confusion in the cases dealing with the subject of guaranty can be clarified by determining first whether the contract was revocable during life though continuing until notice given by the guarantor or whether the obligation be considered as one which is entire and indivisible. If the latter be the proper construction of the guaranty the responsibility for advances made after death continues until the completion of all the acts contemplated. If,

however, the consideration passes at each time a separate sale is made and the contract is, therefore, severable, death ends the liability as to transactions occurring thereafter. (*Matter of Lorch's Estate*, 284 Penn. St. 500.) The decease of a guarantor in a divisible contract of indemnity revokes the obligation as to advances thereafter made. In case of a continuing guaranty, each advance made by the guarantor constitutes a fresh consideration and, when made, an irrevocable promise on the part of the living guarantor. Guaranties have, therefore, been divided into two classes. The first is where the entire consideration passes wholly at one time; the other where it passes at different times and is separable or divisible. The former are not revocable by the guarantor and are not affected by his death. The latter, on the contrary, may be revoked as to subsequent transactions by the guarantor upon notice to that effect and are determined by his death. The guaranty in the case at bar is in the latter class. The distinction between these two classes of guaranties is clearly illustrated in *Lloyd's* v. *Harper* (L. R. [16 Ch. Div.] 290, 319) and *National Eagle Bank* v. *Hunt* (16 R. I. 148). If the guaranty be one which the guarantor could himself have determined by notice, then his death will operate as a revocation. (*Coulthart* v. *Clementson*, L. R. [5 Q. B. Div.] 42; *Harriss* v. *Fawcett*, L. R. [8 Ch. App.] 866; *Offord* v. *Davies*, 12 C. B. [N. S.] 748, 756, 757; *Jordan* v. *Dobbins*, 122 Mass. 168; *Menard* v. *Scudder*, 7 La. Ann. 385, 391, 392; *Hyland* v. *Habich*, 150 Mass. 112; *Valentine* v. *Donohoe-Kelly Banking Co.*, 133 Cal. 191.) If, on the other hand, the guarantor could not have put an end to the guaranty by notice then his death does not revoke the instrument nor does it extinguish his liability thereunder. (*Lloyd's* v. *Harper, supra; Calvert* v. *Gordon*, 3 Man. & Ry. 124, 128; *Green* v. *Young*, 8 Me. 14, 15, 16; *Moore* v. *Wallis*, 18 Ala. 458, 463; *Royal Ins. Co.* v. *Davies*, 40 Iowa, 469.) Where the consideration for the guaranty is given once for all, such as in the case of a surety upon a lease or when the liability is upon a bond given to secure the faithful performance of his duties by a person occupying a position of trust and confidence, the estate of the surety is liable after death. In case of a contract for the payment of money or the sale or purchase of property or of a covenant of warranty, it would be an unreasonable supposition that the parties intended that the obligation should not survive against their representatives although not specially named. (*Kernochan* v. *Murray, supra.*)

Whether the fact of death must be made known to the one advancing credit before liability ends, has caused a divergence of opinion. In some States it has been held that actual or con-

structive notice must be shown to relieve from liability and until that is received, responsibility continues but not beyond. (*Gay* v. *Ward*, 67 Conn. 147; *National Eagle Bank* v. *Hunt, supra; Valentine* v. *Donohoe-Kelly Banking Co., supra; Bedford* v. *Kelley*, 173 Mich. 492; *Exchange National Bank* v. *Hunt*, 75 Wash. 513.) In other jurisdictions it is decided that death *ipso facto* ends the relationship as of the date thereof. (*Aitken* v. *Lang's Adm.*, 106 Ky. 652; *Jordan* v. *Dobbins, supra; Hyland* v. *Habich, supra; Mich. State Bank* v. *Estate of Leavenworth*, 28 Vt. 209; *Pratt* v. *Trustees, etc.*, 93 Ill. 475.) Testing the rules of law laid down in the conflicting authorities referred to and having in mind the practical results that are likely to flow from them, reason, it seems to me, dictates that the latter doctrine is to be preferred. If death ends liability on an instrument of this character, then, as I view it, it is wholly irrelevant whether or not the guarantor acquires notice thereof.

Applying these principles to the facts in the case at bar, I am convinced that the guarantors' promise was in effect a continuing offer or series of offers which were to be successively accepted as each credit of the contemplated series was given. The continuance of an offer is in the nature of its constant repetition which necessarily requires someone capable of making a repetition. (*Pratt* v. *Trustees, etc., supra.*) A dead guarantor can make no promise nor can it be held that the guarantor made the advance at the request of a dead man. (*Valentine* v. *Donohoe-Kelly Banking Co., supra.*) In the instant case the offer of the guarantors could have been withdrawn by them at any time as to future sales. Therefore, it logically follows that if the guarantors could have withdrawn their offer with respect to such sales, their death operated as a withdrawal and no liability can be asserted against their estates on sales made after their decease. The mere fact that the agreement here provides that death shall not terminate the liability of a guarantor is immaterial. The law decrees otherwise. In a contract of sale there must be two minds, at least, concurring at the moment of its completion; but this cannot be if there be but one contracting party in existence. (*Mactier* v. *Frith*, 6 Wend. 103.) Plaintiff's case is one which appeals neither to the sympathy nor the conscience of the court. As was justly remarked in *Jordan* v. *Dobbins* (*supra*): " It is no hardship to require traders whose business it is to deal in goods to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living."

In view of the conclusion which I have reached, it is unnecessary to discuss the other questions argued in the briefs of counsel. The complaint is, therefore, dismissed as to the defendant executors, with costs.