## EDWARD R. ALLEN

### *v.*

## THE PEOPLE *ex rel.* A. J. Hopkins.

1. BOARD OF SUPERVISORS—*representation of cities*—*construction of Township Organization Law of* 1874. The language of the first proviso of section one of article seven, of chapter 139, Rev. Stat. of 1874, in regard to any city not included within the limits of any town, has reference to such cities as are not included in any organized town, and as are named in section twenty of article one of same act, and constitutes separate towns by the name of such cities, respectively.

2. Section one of the act of 1874, entitled "An act to revise the law in relation to township organization," was not intended throughout to apply only to towns and such cities as were not included within the limits of any town, leaving all other cities as before; and although cities which are included within the limits of a town are not expressly provided for by name, yet, being included within the limits of the town, and a component part thereof, they are provided for under the name of towns,—the inhabitants of such cities, for the purpose of representation, being regarded as inhabitants of the towns in which the cities are, respectively, included.

3. Where, under any special act, the representation of any town in the board of supervisors was less than the representation provided by the law of 1874, the special act is, by that law, expressly superseded and made to cease to operate, and it matters not that the exclusive representation of a city which is a part of a town is less by the act of 1874 than under the special act, or be taken away entirely, so that that of the town in which the city is situated be increased.

APPEAL from the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

Mr. M. O. SOUTHWORTH, and Mr. R. G. MONTONY, for the appellant.

Mr. JOHN RANSTEAD, and Mr. A. J. HOPKINS, for the appellee.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an information, in the nature of a *quo warranto*, to test the right of appellant to hold the office of supervisor of

the city of Aurora. Judgment of ouster was rendered, and the defendant appealed to this court.

By section seven of an act amendatory of the act incorporating the city of Aurora, which went into force February 10, 1865, it was enacted, that at all future elections for the city of Aurora, one supervisor should be elected by the legal voters of the city, in addition to the township supervisor and assistant supervisor, who should be a member of the board of supervisors of Kane county, and have all the power of a township supervisor. Private Laws, 1865, vol. 1, p. 245–6. Appellant, at the city election for city officers for the city, in 1875, was elected by the voters of the city to such office of city supervisor in and for the city of Aurora, under the provisions of the act of 1865.

The only question presented is, whether this section seven of this act of 1865 is now in force—whether or no it has been impliedly repealed by section one, article seven, ch. 139, Rev. Stat. 1874, p. 1075, in force March 4, 1874. That section reads as follows:

"Section 1. At the annual town meeting in each town there shall be elected, by ballot, one supervisor (who shall be, *ex-officio*, overseer of the poor), one town clerk, one assessor and one collector, who shall severally hold their offices for one year, and until their successors are elected and qualified, and such justices of the peace, constables and highway commissioners as are provided by law: *Provided*, that in any town, or any city not included within the limits of any town, (except in Cook county,) having 4000 inhabitants, there shall be elected one additional supervisor, to be styled assistant supervisor; in towns having 6500 inhabitants, there shall be elected two assistant supervisors; and so for every additional 2500 inhabitants there shall be elected one additional supervisor—the population of towns to be ascertained by the last federal or State census preceding the election: *Provided*, that nothing in this act shall be so construed as to diminish the representation that any city or town may be entitled to by law. But in case such city or town is now entitled to a greater representa-

tion than is given by this section, it shall not be entitled to additional representation under this section, and the members of the board of supervisors from such city or town now provided for by law shall continue to be elected as now required by law: *And, provided, further*, that whenever the representation of any city or town is or shall become less than is given by this section, no increased representation under any special acts shall be had by such city or town, but its representation shall be as provided for in this section."

It is agreed by the parties:

. "That the city of Aurora is included within the limits of the town of Aurora, but is not co-extensive with it; that, before the act of March 4, 1874, said town of Aurora had two representatives in the board of supervisors of Kane county, to-wit: one supervisor and one assistant supervisor, and the city of Aurora had one city supervisor, under the act of 1865; that since said act of March 4, 1874, the town of Aurora, as a town, has been entitled to and represented by one supervisor and four assistant supervisors on said board of supervisors of Kane county; that the voters within the limits of said city, as well as those outside said city limits, within the town of Aurora, voted for said town supervisors."

As against the repeal of the former special act of 1865, giving the election of a supervisor to the city of Aurora by the subsequent general act of 1874, by implication there is invoked the familiar rule of construction, that a subsequent statute which is general does not abrogate a former statute which is particular. Dwarris on Stat. 674; *The Town of Ottawa* v. *The County of La Salle*, 12 Ill. 339; and it is said, there is no necessary repugnancy between these two acts. On the other hand, in favor of such repeal, reliance is had on the equally well settled principle that a subsequent statute revising the whole subject of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former. *Bartlett* v. *King*, 12 Mass. 537; *Illinois and Michigan Canal* v. *City of Chicago*, 14 Ill. 334; and it makes no difference, in the controlling

operation of the latter, that it is a general and the other a special statute. *Gage* v. *Currier*, 4 Pick. 399; *Dingman* v. *The People*, 51 Ill. 277.

It is answered to this, that section one of the act of 1874 does not embrace the same subject that section seven of the act of 1865 does; that section one provides officers for towns and cities *not included within the limits of any town*, except in Cook county; that it does not provide officers for cities *included* within the limits of some one town; that the city of Aurora is included within the limits of the town of Aurora, and hence said section one does not embrace the subject of supervisor or supervisors for the city of Aurora, and so the question of repeal by implication can not arise.

These general rules of interpretation have little application here, as the section itself recognizes the continuance in existence of the special acts giving representation in the board of supervisors, providing in what cases they shall continue or cease to operate.

There is apparently somewhat of ambiguity in the use of the word city in this section one, and, in order to its proper understanding, it may be read in connection with section twenty, of article one of this act of 1874, which provides that "when, in any county under township organization, there is any territory co-extensive with the limits of a city situated therein, and which is not included within any organized town, such territory shall constitute a town by the name of such city; and all the provisions of this act shall apply to the town so constituted, the same as if it had been organized in the manner provided in this act in the case of the organization of new towns." We are of opinion that it is in reference to such a city, as mentioned in section twenty of the act, that the language in the first proviso of section one refers, when it speaks of a city not included within the limits of any town.

But we do not assent to the view urged, that the sole scope and purpose of the entire section one was to legislate only for towns and such cities as were not included within the limits of any town, leaving all other cities as before.

The act of 1874 is entitled " An act to revise the law in re-
lation to township organization." Theretofore, representation
in the board of supervisors had been 'arbitrary and without
reference to population, each town being entitled to one super-
visor, except, by the amendatory act of 1872, any town having
800 or more legal voters was allowed one additional supervisor.
The city of Aurora, by the act of 1865, was, arbitrarily and
without reference to the number of inhabitants of the city,
given one supervisor.

The act of 1874, to quite an extent, established representation
on the basis of population. It gives to towns, and cities not
included within the limits of any town, of 4000 inhabitants,
one additional supervisor, and for every additional 2500 inhab-
itants it gives to towns a further additional supervisor, subject
to the provisos named—Cook county being excepted. Cities
which are included within the limits of any town, are not dis-
tinctly provided for by name, but being included within the
limits of a town, and so a component part thereof, they are pro-
vided for under the description of towns,—the inhabitants of
such cities, for the purpose of representation, being regarded
as the inhabitants of the towns in which the cities are, respec-
tively, included.

Prior to the act of 1874, the town of Aurora, in which is
situated the city of Aurora, had three supervisors—two elected
by the town and one elected by the city of Aurora, exclusively.
Since the passage of this act, the town of Aurora has been rep-
resented in the board of supervisors of the county by five super-
visors, and to entitle it to this representation the inhabitants
of the city of Aurora have been enumerated with the inhabi-
tants of the town of Aurora, and voters within the limits of
the city, as well as those outside the city limits, within the
town of Aurora, have voted for the town supervisors. There
has been given by this act, on the basis of population, an in-
crease of two in the supervisors from the town of Aurora, and
this increase is given virtually to the city of Aurora, as we
think we may assume its population to preponderate so largely
over that of the rest of the town outside of the city, as to en-

able it to essentially control the election of the supervisors of the town—and such, we may be entitled to say, from our general knowledge, would be the result in every town having a city within its limits.    And yet it is claimed, that, under the law of 1865, the city of Aurora, by itself, exclusively, is entitled to elect an additional city supervisor.    It is contrary to the principle and the evident intention of the act.

It is the manifest purpose of the act of 1874, where it might be done without lessening any existing representation, to have the representation in the board of supervisors, above a certain limit, uniform, according to population in the various towns of a county.

The facts here, in our opinion, make the case contemplated by the last proviso of this section one of the act of 1874, in which case, any special act giving representation is expressly superseded and made to cease to operate.

The representation of the town of Aurora was, before, less than is given by that section—being by itself two, and with the city of Aurora, situated within it, three supervisors— whereas, by that section, it was five supervisors.    In such case, of an existing less representation, this proviso declares, in express terms, that there shall be no increased representation under any special acts, but that the representation shall be as provided for in that section.    It matters not, in our view, that the exclusive representation of the city of Aurora would be less under this section, or be taken away, so that that of the town in which it is situated be increased.    This would virtually, and within the true intendment of the act, if not in terms, as we think, give the city increased representation.    It would have given to it, by the section, an increase of representation by the increased representation of the town, and it would have representation according to population, which is a fair provision, and the general principle of the act.

The judgment of ouster given by the court below is affirmed.
*Judgment affirmed.*

Mr. Justice Dickey: Before the passage of the statute in question, there existed three classes of supervisors, who constituted the board of supervisors of the county: 1st, the supervisors chosen by the electors of a town, whether any of them were denizens of a city included within the bounds of the town or not; 2d, the supervisors chosen alone by the electors of cities, which, by statute, had been detached for this purpose from the rest of the town in which it was, so that the electors of such city had no vote in the choice of the town supervisors; and, 3d, the extra supervisors given to certain cities, where the city was not so detached from the town, but where the voters still remained voters of the town.

It seems to me, that the sole purpose of this statute was to regulate the representation in the first two cases, in some degree, according to population, and that it was not the purpose of the legislature to interfere at all with any *special* representation given by special statute to any city which remained a part of the town, and hence, in its language, this statute is confined, in its general provisions, to " towns," and to " cities *not included within the limits of any town.*" This is the more manifest from the provisions of provisos of the act, showing that it was not the intention of the act to cut off extra representation, except in special cases, of which this is not one.