## The People, ex rel. George Higgins, Appellee, v. J. S. Freeman, Appellant.

1. QUO WARRANTO—*what allegations of information sufficient.*
An information in *quo warranto* to oust the respondent from the
office of city supervisor, *held,* sufficiently to allege (1) the incor-
poration of the city in question, (2) the division of such city into
wards, (3) that the day of the election in question was the day
fixed by law for the holding thereof, (4) that the city council had

jurisdiction of the contest of the election in question and (5) that the respondent was usurping said office of supervisor, etc.

2. TOWNSHIPS—*when question of repeal of special charter not raised.* In a proceeding by information in *quo warranto* to oust the respondent from the office of supervisor, *held,* that the demurrer to such information did not raise the question as to whether the special charter had been superseded by the general act of 1874 revising the law in relation to township organization.

3. TOWNSHIPS—*what not repealed by general act. Held,* that the general law in relation to the election of township supervisors as it now stands does not indicate an intention to supersede any special act relating to the election of supervisors in any particular locality.

Quo warranto. Appeal from the Circuit Court of Richland county; the Hon. J. R. CREIGHTON, Judge, presiding. Heard in this court at the August term, 1908. Affirmed. Opinion filed March 4, 1909.

JOHN A. MACNEIL and H. G. MORRIS, for appellant.

R. S. ROWLAND, R. B. WITCHER and H. T. DEWHIRST, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On April 10, 1908, the state's attorney of Richland county by leave of court filed an information in the nature of a *quo warranto,* in the name of the People of the State of Illinois upon the relation of George Higgins against J. S. Freeman. To this information a demurrer was sustained by the court and afterwards on May 14, 1908, an amended information was filed, charging that for the space of eleven months prior thereto, appellant, the said J. S. Freeman, had unlawfully held without any warrant or right, the office of supervisor of the second ward of the city of Olney in said county and state; that said city was incorporated under a special charter granted it in 1867, which had been adopted by the people thereof, at an election held for that purpose; that Article 8 of said charter provides for the annual election of one supervisor in each ward of said city in addition to the

township supervisors of the township of Olney and that said ward supervisors when elected, should possess and enjoy the rights and powers which were then or might thereafter be possessed and enjoyed by the several township supervisors of the county; that said charter is still operative and said city of Olney has for many years exercised the right so conferred upon it there, by electing ward supervisors in each of its wards; that at an election held on April 9, 1907, for the purpose of electing supervisors from each of said wards said George Higgins was duly elected as supervisor for the second ward of said city, received a certificate of election, took the oath of office and would have entered into the enjoyment of said office and its emoluments thereof, but was prevented therefrom by the fact that appellant had usurped and unlawfully withheld, as he still does, said office, from said relator, Higgins; that the judges at said election declared that said Higgins received 112 votes and appellant 113 votes for said office; that Higgins contested the election before the city council on April 15, 1907, as is provided by law, but that the council dismissed the same for the want of jurisdiction; that afterwards on petition of Higgins the Circuit Court of said county of Richland, rendered a decree directing said city council to proceed to hear said contest and upon a recount of the ballots, it was determined by the council that Higgins had received 111 votes and appellant 107 votes for said office of supervisor and that said Higgins was duly declared to have been elected supervisor of the second ward of said city, a certificate of election issued to him and the oath of office taken by him; but that appellant had usurped and unlawfully withheld said office as he still does.

On May 16, 1908, appellant filed a general and special demurrer to the information.

The special causes of demurrer set out various alleged technical informalities and insufficiencies of the information and in addition stated that said in-

formation "does not aver or show any legal office created by any public or private law of the State of Illinois, which the defendant is now usurping or to which the relator was or could have been elected;" that "there is no such office known to the state of Illinois as supervisor of the second ward of the city of Olney, but said office is wholly fictitious and without legal existence." The court overruled the demurrer to the amended information, and appellant having refused to plead, elected to stand by his demurrer. Thereupon judgment *pro confesso* was rendered against appellant. He was ordered to surrender the office of supervisor of the second ward of the city of Olney to said Higgins, a writ of ouster was ordered to be issued by the clerk of the court against him and judgment was entered against him for the costs.

Appellant here complains that the court below erred in overruling his general and special demurrer to the amended information, in rendering judgment *pro confesso* against him, in ordering him to deliver up said office of supervisor to said Higgins, in decreeing a writ of ouster against him and rendering a judgment against him for costs.

Among the reasons stated in the special demurrer why the information was insufficient, was that it wholly failed to show the legal incorporation of the city of Olney under said special law or the legal adoption of the charter of the city according to law. But this objection, even if it could be properly raised in this manner, appears to us to be without force as the information stated that the city of Olney was incorporated under and by virtue of said special act or charter; that proclamation was issued by the former trustees of the town of Olney; that an election was held by the inhabitants of said town on the 30th day of March, 1867; that said charter was then and there adopted and that the town of Olney in said county of Richland then and there became the city of Olney. We think this allegation was a sufficient statement to

show on its face the incorporation of the city. The charge that the information failed to show when the city was divided into four wards or in what manner said division was made or that there was a division known as the second ward, is fully covered by the statement therein that by virtue of said charter, the city of Olney was on April 9, 1907, and for several years prior thereto, divided into four wards, designated as the first ward, second ward, third ward and fourth ward, and that the city of Olney by virtue of the law was entitled on said date to one ward supervisor from each of said four wards. It was not necessary to state the exact day upon which the city was divided into said wards if such division existed at the time the election in question was held. The statement in the demurrer that the information does not show that said 9th day of April, 1907, was the day fixed by law for holding the election for supervisor aforesaid, is covered by the statement therein, that in conformity to the law and in accordance with said charter due and legal notices were given at least ten days prior to said election, of the election to be held at Olney, Illinois, on the 9th day of April, A. D. 1907, for the purpose of electing supervisors from each of said wards according to law. And this statement also answers the objection that the information does not allege on what date the election of city officers was fixed by law to be held. The statement in the demurrer that the information did not show that the city council had jurisdiction of the contest of said election or the recount of the ballots or that the council recounted said ballots under any authority of law, vested in them, is met by the statement therein that the recount of the ballots was made by the city council under a decree of the Circuit Court of Richland county, commanding them to do so. Another statement of the demurrer was that the information did not show in what manner appellant was usurping said office or by what means he was depriving the relator from holding the same.

The allegation in the information that appellant had for the space of eleven months unlawfully held and executed and still does hold and execute without any warrant or right whatsoever, said office of supervisor for said ward, and the further statement that said Higgins was prevented from exercising his authority to such office, or of enjoying the rights and emoluments thereof, for the reason that appellant had usurped and unlawfully withheld the same, together with a history of the circumstances attending the election, and the contest thereof, were fully sufficient to show how appellant was usurping the office and depriving the relator thereof. What is above said disposes of all the special causes of demurrer assigned by appellant except only those which relate to the question whether there was in fact such an office in law as supervisor of the second ward of Olney.

Article 8 of the special charter of the city of Olney, provided there should be annually elected one supervisor in each ward of said city, but it is claimed by appellant that the act of 1874 revising the law in relation to township organization (Rev. Stat. 1874, chap. 139) which was general in its terms, repealed all special laws in conflict with it and provided a uniform system of representation on the county board of supervisors, applicable alike to townships in which cities like Olney were situated and to all other townships in the state; that by this law representation on the county board was changed from a territorial basis to a numerical basis.

Section 1 of Article 7 of said act, as amended in 1901, provides that at the annual town meeting in each town, there shall be elected by ballot one supervisor who shall hold his office for one year and until his successor is elected and qualified "Provided that in any town or city not included within the limits of any town (except in Cook county) having 4,000 inhabitants, there shall be elected one additional supervisor to be styled assistant supervisor; in towns having

6,500 inhabitants there shall be elected two assistant supervisors; and so for every additional 2,500 inhabitants there shall be elected one additional supervisor.''

Appellant states his position to be that this general law repealed and abrogated that part of the charter of the city of Olney authorizing the election of supervisors from the various wards in said city and that there is now no such office or officer as supervisor of the second ward of the city of Olney. To sustain this position appellant cites and relies upon the case of Allen v. The People, 84 Ill. 502. This case was an information in the nature of a *quo warranto* to test the right of appellant to hold the office of supervisor of the city of Aurora, where a judgment of ouster was rendered. By an act amending the act incorporating the city of Aurora, passed in 1865, it was provided that at all future elections for the city of Aurora, one supervisor should be elected by the legal voters of the city in addition to the township supervisor and assistant supervisor, who should be a member of the board of supervisors of Kane county and have all the powers of a township supervisor. The question there presented was, whether or not that special provision had been impliedly repealed by section 1 article 7 of the township organization law above referred to.

At that time, which was prior to the amendment of 1901, the section above referred to contained a proviso that nothing in the act should ''be so construed as to diminish the representation that any city or town may be entitled to by law. But in case such city or town is now entitled to a greater representation than is given by this section, it shall not be entitled to additional representation under this section and the members of the board of supervisors from such city or town, now provided for by law, shall continue to be elected as now required by law. And provided further, that whenever the representation of any city or town is or shall become less than is given by this sec-

tion, no increased representation under any special act shall be had by such city or town but its representation shall be as provided for in this section.''

It was held in that case that the facts made out such a case as was contemplated by the last proviso of said section and that therefore any special act giving representation was expressly superseded and made to cease to operate and it was further said, that as by the special act, the representation of the town of Aurora including that of the city was less than that which was given by the section of the general act of 1874 above referred to, the latter act must, by virtue of the last proviso contained in it, prevail. The provisos above referred to were not contained in said section as amended in 1901, but if said provisos were applicable here, as they might be for some purpose, we hold that while they might entitle appellant to show by way of defense that the representation of the township in which the city of Olney is situated would be more under the general act than under the special, and that therefore the general act should be held to apply, yet that was a matter to be set out by way of answer as a defense and would not render the information subject to demurrer.

In the section of the general law relating to the election of supervisors, as it now stands, there is nothing to indicate an intention to supersede any special act relating to the election of supervisors in any particular locality, and the information on its face shows no conditions which would warrant the court in holding the special law did not apply. In our opinion the court below properly overruled the demurrer to the information and its subsequent judgment is hereby affirmed.

*Affirmed.*