THE PEOPLE *ex rel.* George Higgins, Appellee, *vs.* J. S.
FREEMAN, Appellant.

*Opinion filed October 26, 1909.*

1. STATUTES—*irreconcilable repugnance operates as repeal by
implication.* While repeals by implication are not favored, yet
when the repugnance between two statutes is so plain that they
cannot be reconciled the earlier statute must be held to be repealed.

2. SAME—*when a subsequent statute operates as a repeal.* A
statute revising the whole subject of a former one, and evidently
intended as a substitute for the former one although there are no
words in the subsequent statute to that effect, operates as a repeal
of the former.

3. TOWNSHIP ORGANIZATION—*purpose of section 1 of article 7
of Township Organization law.* The purpose of section 1 of ar-
ticle 7 of the Township Organization law as it has existed since
its amendment in 1901, (Hurd's Stat. 1908, p. 2149,) is, that in
towns or cities, except in Cook county and except in a town or
city not included within the limits of any town, the representation
on the board of supervisors shall be in proportion to population.

4. MUNICIPAL CORPORATIONS—*provision of the special charter
of Olney relating to election of supervisors is repealed.* The pro-
vision of the special charter of the city of Olney requiring an an-
nual election of supervisors by wards was repealed, by implication,
by section 1 of the act of 1889, providing for the division of super-
visors into classes and making their term of office two years, and
by section 1 of article 7 of the Township Organization law, as
amended in 1901, providing for the election of supervisors in pro-
portion to population in counties under township organization.

5. SAME—*when quo warranto is not an attack on incorporation
of city.* An information in the nature of *quo warranto,* brought
upon the relation of the defeated candidate for supervisor against
the successful candidate, charging him with holding the office of
supervisor without right, is not an attack, either directly or col-
laterally, upon the legal incorporation of the city from which the
respondent was elected, where the question involved is whether the
provision of the city's special charter relating to the method of
electing supervisors has been repealed by implication.

6. QUO WARRANTO—*quo warranto will not lie to try the title to
abolished office.* Quo warranto will not lie to try the title to the
office of supervisor from a certain ward of a city where the provi-
sion of the city's special charter authorizing the election of super-
visors by wards has been repealed by implication, thus abolishing
the office as to such wards.

7. APPEALS AND ERRORS—*jurisdiction of appeal in quo warranto.* If a *quo warranto* proceeding is an attack upon the legal organization of a municipal corporation a franchise is involved and an appeal lies directly to the Supreme Court; but where the only question involved is whether a certain provision of a city's special charter relating to the method of electing supervisors has been repealed by implication, the appeal lies first to the Appellate Court.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Richland county; the Hon. J. R. CREIGHTON, Judge, presiding.

JOHN A. MACNEIL, and H. G. MORRIS, for appellant.

W. J. McCANN, State's Attorney, R. B. WITCHER, and H. T. DEWHIRST, (R. S. ROWLAND, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

April 10, 1908, the State's attorney of Richland county filed an information in the nature of *quo warranto* in the name of the People, upon the relation of George Higgins, against J. S. Freeman. May 14, 1908, an amended petition was filed, in which it was charged, among other things, that Freeman unlawfully held without warrant or right the office of supervisor in the second ward of the city of Olney, in said county. A general and special demurrer to the information was overruled and judgment entered *pro confesso* against appellant, and a decree of ouster was entered against him, ordering that he deliver up said office of supervisor to the said Higgins. On appeal to the Appellate Court the judgment of the lower court was affirmed, and the case has been appealed to this court.

It appears from the record that the city of Olney is acting under a special charter, which was granted to it in 1867. (1 Private Laws of 1867, p. 824.) It has never adopted the general City and Village act. Section 1 of

article 8 of that special charter provides that "the legal voters in the several wards in the city of Olney shall be entitled to elect, annually, one supervisor in each ward in addition to the township supervisor to which the township of Olney is now entitled, and the several supervisors so elected shall be members of the board of supervisors of Richland county, and shall have, possess and enjoy all the rights, powers and privileges that now or hereafter shall be possessed and enjoyed by the several township supervisors of the said county of Richland." The second section of this article provides that each ward at the time fixed for city elections shall elect one supervisor, the returns of the election as to said supervisor to be made to the town clerk of the town. It further appears that at an election held in the second ward of said city on April 9, 1907, appellant, Freeman, and the relator, Higgins, were opposing candidates for supervisor. The county of Richland is under township organization.

The chief contention of appellant is that the special provision of the charter of the city of Olney as to the election of supervisor has been repealed, by implication, by the general Township law of 1874, and especially by section 1 of article 7 of that law as now amended, (Hurd's Stat. 1908, p. 2149,) and section 1 of an act of 1889, with reference to the election of supervisors. (Hurd's Stat. 1908, p. 2158.) If this contention be upheld it practically disposes of the entire case, and will therefore be considered first.

When the Township Organization law was revised by the act of 1874 there was plainly an attempt to make a code, as it were, for township matters, and to collect in that code all laws touching township organization. By section 1 of article 7 it was clearly intended to make a general provision as to the election of township supervisors. (Laws of 1873-74,—Myers' ed.—p. 280.) It will be seen, however, from an examination of this section as originally

passed, that different provisions were made with reference to different towns and cities, depending upon their size and their then method of electing supervisors. This section was amended in 1887, (Bradwell's Laws of 1887, p. 220,) still leaving, however, different provisions for various classes of cities and towns. This section was amended again in 1901, and is still in force as then enacted, and reads as follows: "At the annual town meeting in each town, there shall be elected by ballot, one supervisor (who shall be *ex-officio* overseer of the poor,) one town clerk, one assessor and one collector, who shall severally hold their offices for one year, and until their successors are elected and qualified: * * * *Provided,* that in any town or city not included within the limits of any town (except in Cook county) having 4000 inhabitants, there shall be elected one additional supervisor, to be styled assistant supervisor; in towns having 6500 inhabitants, there shall be elected two assistant supervisors; and so for every additional 2500 inhabitants, there shall be elected one additional supervisor," etc.

In 1889 an independent act of three sections, with reference to the election of supervisors, became a law. Section 1 of that act reads: "That the supervisors elected at the annual town meetings, in their respective towns in the counties now under township organization, on the first Tuesday of April, 1890, (except in the county of Cook,) * * * shall, at the first regular or special meeting of the county boards of such counties thereafter be divided into two classes, to consist of one-half of the members of such board, as near as may be. The supervisors so to be classified to be selected by lot: *Provided,* that the supervisors of any town having a representation of two or more members shall be separately selected and classified by lot, so as to be divided among the two classes as near equally as may be. The first class of supervisors shall serve for the period of one year, and the second class for the period of two years, or until their successors are elected and qualified:

*Provided,* that where such county board is constituted of odd numbers, the smaller fraction of such board shall constitute such second class, and thereafter at the expiration of the term of each supervisor his successor shall be elected and serve in such county board for the term of two years, or until his successor shall have been duly elected and qualified, in the manner now provided by law." (Hurd's Stat. 1908, p. 2158.)

While repeals by implication are not favored, (*Lang* v. *Friesenecker,* 213 Ill. 598,) yet when the repugnance between two statutes is so plain that they cannot be reconciled, such a repeal must follow. Said section 1 of article 7 of the Township Organization law, as enacted in 1874, was construed by this court in *Allen* v. *People,* 84 Ill. 502, and it was there held that this general act had repealed, by implication, the special act as to the election of supervisors in the city of Aurora. The authorities on the subject of repeal by implication were reviewed at some length, and it was stated as a well settled principle that a subsequent statute revising the whole subject of a former one and evidently intended as a substitute for it, although there are no express words in it to that effect, operates as a repeal of the former. To the same effect are *Spring* v. *Collector of Olney,* 78 Ill. 101, *McCormick* v. *People,* 139 id. 499, *People* v. *Town of Thornton,* 186 id. 162, and *People* v. *Healy,* 231 id. 629.

It is argued, however, that the reasoning of *Allen* v. *People, supra,* might bring this cause, on the pleadings, within some of the provisos of said section 1 as originally enacted. We do not think such a conclusion can fairly be drawn from that decision. But even if that were true, the section has been materially amended by the act of 1901. It is quite manifest by reading the present section as now amended in connection with the section as originally enacted, that it was the legislature's intention by such amendment to provide for the election of supervisors in all towns and

cities except Cook county, and except in "a town or city not included within the limits of any town," as that clause was construed by this court in *Allen* v. *People, supra,* so that such towns (with these exceptions) should be represented on the county board in proportion to the population.

It is conceded by counsel for appellee that a general law passed subsequent to a special law may be so repugnant to it as to repeal such special law by implication, and it is further conceded that said section 1 of the act of 1889 has necessarily repealed, by implication, that part of the charter of the city of Olney which provides for an election of supervisors each year, and that now the supervisors, instead of holding office for one year, hold for two years. By the special charter of the city of Olney said election for supervisors takes place the second Tuesday of April; by this act of 1889 the election of supervisors occurs on the first Tuesday of April. If this special charter as to the election of supervisors for the city of Olney were in force it would be impossible to classify the supervisors elected in that city, as provided in said law of 1889. This special charter is repugnant not only in these and other respects to the said law of 1889, but is also clearly repugnant to section 1 of article 7 of the Township law as now amended, which attempts to apportion the supervisors in a county according to population. Under the special charter of the city of Olney there are no requirements as to the population for each ward. The city council, by ordinance, could increase, arbitrarily, the number of supervisors that the city should have on the county board, without reference to the population or provisions of the Township Organization law. The present special charter of the city of Olney with reference to the election of supervisors is not only repugnant in many of its features to the Township Organization law, but is in direct conflict with the letter and spirit of that act as to the management of county affairs and the election of supervisors in counties under township organization.

We do not find it necessary to decide whether section 1 of article 7 of the Township Organization law as originally enacted in 1874 or as amended in 1887, repealed, by implication, the provision of the special charter of the city of Olney with reference to the election of supervisors by wards, but we think it is very clear that such provision of said special charter as to the election of supervisors, if not theretofore repealed, was plainly repealed by said act of 1889, and that this intent of the legislature was made even more clear by the amendment of said section 1 of article 7 of the Township Organization law in 1901.

Counsel for appellee contend that this information is a collateral attack upon the legal incorporation of the city of Olney. We think otherwise. It is neither a direct nor collateral attack upon said organization. If it were, then this case should have been brought direct from the trial court to this court, as a franchise would have been involved. (*People* v. *City of Spring Valley,* 129 Ill. 169; *People* v. *Marquiss,* 192 id. 377.) The supervisors elected under the special charter were not officers of the city of Olney. The charter simply provided a method for electing supervisors. The question here under consideration is not whether the city of Olney was legally incorporated. It is not even the question of the validity of a statute, but only as to whether one section of this special charter has been repealed by implication. For this reason the case was properly taken by appeal first to the Appellate Court. *City of Cairo* v. *Bross,* 99 Ill. 521; *Pearce* v. *Vittum,* 193 id. 192.

There was no office of supervisor to which either appellant or relator could be elected in the second ward in the city of Olney, hence *quo warranto* will not lie to try the title thereto. *Hedrick* v. *People,* 221 Ill. 374.

The judgments of the Appellate and circuit courts will therefore be reversed and the cause remanded to the circuit court, with directions to sustain the demurrer to the information.           *Reversed and remanded, with directions.*