Trumbull, J. The question in this case is, whether the . sureties upon the appeal bond of the collector, are discharged by the changes in the law regulating the duties of collectors, enacted subsequent to the date of the bond. The alterations in the law, are set up in a number of distinct pleas, to all of which the Circuit Court sustained a demurrer. One of the pleas, after referring to various statutes enacted subsequent, to the date of the bond, alleges that thereby the liability of the sureties was materially changed; and it is insisted that the plaintiffs below, by demurring to the plea, have admitted the truth of this allegation. This is not so. A demurrer only admits such facts as are well pleaded. The laws in question are all public acts, and by demurring to a plea construing them, the plaintiffs did not admit the construction to be correct. That is a matter to' be determined by the Court. The changes in the law complained of, are all of a general character, and applicable to all collectors in the State. They impose no new duty upon the collector, which he was not before required to perform, nor are the liabilities of the sureties in any respect added to or increased, by the passage of the subsequent acts. The provision of the Statute, postponing the time when the collector should be authorized to distrain for taxes, from the first of February till the first of March, which was so much relied upon in the argument, did not increase the liability of the sureties. The law has always provided for discharging the collector from responsibility, on account of any taxes which could not be collected by reasonable and proper diligence. If, therefore, he was unable to make the taxes of any individual, by reason of the removal or insolvency of such individual, between the first day of February and the first day of March, the law discharged the Sheriff from liability on account of such tax. Thus his liability was diminished, in exact proportion as his power to collect was abridged. The other alterations of the law set up by the sureties in their discharge, are a change in the time of obtaining judgment against delinquent lands, from May 27th, to June first; and in the time for settlement by the collector with the Auditor, from June 27th, to July first. How the sureties were prejudiced by these changes has not been shown, nor do we perceive. It was a matter of no importance to them, whether the judgment against delinquent lands, was a few days sooner or later, nor were their liabilities increased, by requiring a settlement with the Auditor a few weeks earlier, so that an abundance of time was still left the collector, within which to make the taxes, which is not denied. The fourth plea, alleges a change in the law under which the contract was made, without the consent of the sureties, whereby they were required to pay interest, at the rate of ten per cent, from the first day of July, 1850. It would be a sufficient answer to this plea, to say, that the act of November 6,1849, referred to in said plea, imposes no such liability upon the sureties. But the plea is defective, in not alleging upon what sum, or upon what account, they were required to pay interest. The parties, have, however, treated it as a plea, setting up as a consequence of the change in the time of settlement, that the sureties have become liable to pay ten per cent, per annum, upon the balance that the collector should fail to pay, from the first, instead of the twenty seventh of July, as the law stood when the bond was executed. Even in this point of view, the plea presents no defence to the action. The ten per cent, is not imposed by the law upon the sureties of the collector, but as a personal penalty upon him. Acts 1847, p. 81, §18. The sureties, are in no event liable for this penalty, nor does it appear from the record that it has been assessed against them. The point to be decided, then, is whether the sureties of the collector are discharged by the enactment of general laws, sub sequent to the date of the bond, by which the collector’s duties are varied, but not to the prejudice of the sureties. It was decided by this Court, at its last term, at Mt. Vernon, in the case of The Governor v. Ridgway, ante, p. 14, that the sureties of an officer upon his official bond, conditioned for the performance of the duties of the office, were liable for the failure of their principal, to perform duties prescribed by subsequent laws, provided such additional duties were of a character properly appertaining to the office, and connected with its duties, as regulated by law at the time the bond was entered into. It is unnecessary to repeat here, the reasons for that decision, or the authorities upon which it was based, as they can be seen by a reference to the case. The condition of the bond in this case is, that the said “ William Compher shall perform all the duties required to be performed by him, as collector of the said county of Peoria, in the time and manner prescribed by law,” that is, all the duties properly appertaining to the office of collector, and that shall, from time to time, be required of him, during his continuance in office. The power to control the revenue is one of the highest attributes of sovereignty. Without this power, no government could exist, and it cannot be supposed that the General Assembly-intended to part with this important prerogative, or to contract that no change should be made in the manner of collecting the revenue, during the continuance in office of any of its collectors. Parties who go security upon bonds of this character, do so with the full knowledge and expectation, that the revenue laws will be changed, and the duties of the collectors altered as the public interests may require, and they have no right to complain of any alteration in the laws not materially changing the character of the duties of their principal, especially, when such-alterations are in no wise prejudicial to their interest. Such are.thq changes , of the law under consideration. It is, however, insisted that this Court has given a different construction to this class of bonds, and the case of Reynolds v. Hall, 1 Scam., 35, is relied upon to support this position. That case was very different from this. It decides that the sureties of the State Treasurer, were not liable for his acts as cashier of the State Bank, the duties of cashier, having been cast upon him by a law subsequent to the date of the bond. The decision is put upon the express ground, that a new office had been imposed upon the treasurer, not only unconnected with his office as Treasurer, but of a diversified and entirely different nature. To have held the sureties liable in that case, would have been to extend their liability by implication, beyond the terms of the contract, as understood by the parties, at the time it was made. Not so in this case. Here no new and distinct duty was imposed upon Compher; on the contrary, all the changes in the law related to the detail of the duties before imposed upon him. Two other cases decided in this Court. Davis v. The People, 1 Gil., 409, and The People v. McHatton, 2 Gil., 638, are also relied lipón as decisive of this case. In both of those cases, the time fixed by law, when collectors were required to pay over the amount of taxes, was extended to Davis and McHatton by special acts of the Legislature, and it may well be said that their sureties did not contemplate, at the time the bond was executed, that the Legislature would, by special acts, make the time of settlement, or the liability of those particular collectors, different from that of all others in the State. They could not have anticipated, that the case of the particular collector, for whom they had become sureties, would be made an exception to all others, and it would undoubtedly have violated the terms of the contract, as understood by the parties when it was made, to have held them liable under such circumstances. There is another case, however, that of The People v. McHatton, 2 Gil., 731, which is directly in point upon this branch of the case. It was held in that case, that the sureties of the collector were not discharged by a change in the time of holding court, whereby the time for paying the taxes into the State Treasurf*was extefded. It is true the law did not at that time, specify tj¡ie cláy for«paj|mg over,taxes, except by referenge 1g> gthgr acts, and such was the case when the present bond was executed, but the payment was to be made, within a certain number of days after the sale of the delinquent lands, which was also to take place a certain length of time, after the first term in each year of the Circuit Court of the particular county. The time of the sale and payment, were made to depend upon the time of holding the Circuit Court, but that was fixed by law at a certain time. The day of payment may, therefore! be said to have been fixed, for that is certain which may be rendered certain. At all events, the time of payment was as much fixed, and as much changed, in McHatton’s case as in this. The cases are, therefore, precisely analogous. The case of Kindle v. The State, 7 Blackf., 586, is also directly in point upon most of the questions under consideration. The action was upon a County Treasurer’s bond, and the Court say : “ The contract refers to laws that may be passed during the term for which the treasurer holds, as well as the law in force at the time it was entered into. * * * * The law relied upon in this case as effecting the discharge of the sureties, is a general law having respect only to the times of settlement with the authorized agents of the government. As to such a matter, we think the Legislature intended, and the bond contemplates, that the law may be modified as experience shall show that the public good demands.” The judgment of the Circuit Court is affirmed with costs. Judgment Affirmed.