CAROLINE LANG

*v.*

MATTHEW FRIESENECKER.

*Opinion filed February 21, 1905.*

1. CONSTITUTIONAL LAW—*amendment of 1895 of section 9 of the act relating to lunatics, drunkards, etc., is not unconstitutional.* The amendment of 1895 to section 9 of the act relating to lunatics, drunkards, idiots and spendthrifts, (Laws of 1895, p. 244,) which authorizes a conservator, upon the death of his ward, to make final settlement of the estate without further letters of administration, is not unconstitutional, as embracing a subject not expressed in the title of the act.

2. STATUTES—*when subsequent act repeals or creates an exception to former act.* Where a special act is repugnant to or inconsistent with a former general one, a *pro tanto* repeal of the former will be implied or an exception will be regarded as engrafted upon the earlier act by the later one.

3. EXECUTORS AND ADMINISTRATORS—*conservator may administer estate as against next of kin.* The amendment of 1895 to section 9 of the act relating to lunatics, drunkards, idiots and spendthrifts, which authorizes a conservator to administer the estate of his deceased ward, creates an exception to sections 1 and 18 of the Administration act, providing for the issue of letters of administration to the next of kin of deceased or some one appointed by them.

4. SAME—*when estate is regarded as intestate as respects appointment of personal representative.* If a person named as executor in a will is dead when the will is offered for probate, the estate must be regarded, under section 1 of the Administration act, as intestate, so far as the appointment of a personal representative is concerned.

APPEAL from the County Court of JoDaviess county; the Hon. WILLIAM RIPPIN, Judge, presiding.

This is an appeal from an order of the county court of JoDaviess county, entered on September 3, 1904, dismissing the petition of the appellant, Caroline Lang, and one Grant M. Heiserman, for the granting of letters of administration with the will annexed to M. H. Cleary on the estate of Wil-

helmina Kettler, deceased, and ordering that the said Matthew Friesenecker proceed with the administration of said estate, as by law empowered.

Wilhelmina Kettler, who had been insane for several years, died testate on May 2, 1904, leaving a will, in which she appointed Louis A. Rowley executor. Rowley, the executor, had been dead for several years when this proceeding was instituted. Wilhelmina Kettler, deceased, left surviving her neither husband, nor children, nor descendants of children, but left surviving her, as next of kin and heirs-at-law, Caroline Lang, the appellant, her sister, Gottlieb Heiserman, a brother, and John F. Heiserman, Louis J. Heiserman, and Grant M. Heiserman, nephews, being the children of a deceased brother, named John Jacob Heiserman. The will of Wilhelmina Kettler was executed on February 23, 1895, more than nine years before her death. By its terms she left all her estate, real, personal, or mixed, and of every nature and kind, share and share alike to her sister, the appellant, Caroline Lang, of Montana, and her brother, Jacob Heiserman, of St. Louis, Missouri. She left personal estate, consisting chiefly of moneys, notes, credits and securities, being estimated to be worth about $20,000.00. The will of the deceased testatrix was admitted to probate according to law.

The appellee, Friesenecker, was on August 30, 1897, appointed conservator of Wilhelmina Kettler, insane, by order of said county court.

On June 20, 1904, Caroline Lang by George L. Blum, her attorney in fact, and Grant M. Heiserman above named, being the sister and nephew of the deceased, by M. H. Cleary, their attorney, presented to the county court their petition, praying that letters of administration with the will annexed upon the estate of the deceased Wilhelmina Kettler might be issued to M. H. Cleary. The appellee, Friesenecker, by his attorneys, entered his appearance, and objected to the granting of letters as prayed for in said petition, and claimed the right as such conservator to settle up the estate in question,

as provided by section 9 of chapter 86 of the statutes of Illinois. A power of attorney, executed by Caroline Lang to George L. Blum, dated May 31, 1904, was presented to the court, and it is conceded that such power of attorney authorized the said Blum to file the petition for the appellant, and to take such steps as might be necessary in the administration of the estate. Wilhelmina Kettler was insane at the time of her death.

M. H. Cleary, for appellant.

Jones & Kerz, and Sheean & Sheean, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

The question in this case is, whether the appellant, Caroline Lang, as next of kin to Wilhelmina Kettler, deceased, had a right to nominate M. H. Cleary to be administrator with the will annexed of the estate of the deceased under section 18 of the Administration act, or whether the appellee, Friesenecker, having been duly appointed conservator of the estate of Mrs. Kettler and acting as such at the time of her death, had a right to administer on such estate. The court denied the prayer of the petition of the appellant to grant letters of administration to Cleary, and dismissed the same, and directed the appellee, Friesenecker, as conservator, to settle up the estate, and to that end exercise all the powers of administrator.

Section 1 of the act in regard to the administration of estates, provides "that when a will has been duly proved and allowed, the county court shall issue letters testamentary thereon to the executor named in such will, if he is legally competent and accepts the trust, and gives bonds to discharge the same; and when * * * the executor named therein dies, * * * the court shall commit the administration of the estate unto the widow, surviving husband, next of-kin,

or creditor, the same as if the testate had died intestate."
(1 Starr & Cur. Ann. Stat.—2d ed.—p. 269). In the case
at bar, Rowley, the executor named in Mrs. Kettler's will,
had died, and, under the provisions of section 1 of the Ad-
ministration act as above quoted, the estate is to be regarded
as intestate, so far as the selection of the administrator there-
of is concerned.

Section 9 of chapter 86 of the Revised Statutes, being
"An act to revise the law in relation to idiots, lunatics,
drunkards and spendthrifts," approved March 26, 1874, pro-
vided as follows: "Such conservator shall at the expiration
of his trust, pay and deliver to those entitled thereto all the
money, estate and title papers in his hands as conservator,
or with which he is chargeable as such, in such manner as
shall be directed by the order or decree of any court having
jurisdiction thereof." (2 Starr & Curt. Ann. Stat.—2d ed.—
p. 2665). By act of June 7, 1895, entitled "An act to amend
section 9 of chapter 86 of an act entitled 'An act to revise
the law in relation to idiots, lunatics, drunkards and spend-
thrifts,' approved March 26, 1874, in force July 1, 1874,"
said section 9 was amended by adding thereto the following:
"Whenever any lunatic, idiot, drunkard or spendthrift shall
die, seized or possessed of any real or personal estate, then
such conservator shall have full power and authority under
the letters issued to him or her to make final settlement and
distribution of the estate of said deceased ward without fur-
ther letters of administration, in such time and manner as is
required by law of administrators of the estate of deceased
persons: *Provided*, this shall not apply to non-resident con-
servators." (Sess. Laws of Ill. of 1895, p. 244). The object
of this amendment was evidently to save the expense of
administering upon the estates of deceased insane persons,
whose estates were already under the control of conservators
and undergoing settlement by the latter. The amendatory act
set forth the whole of section 9, including the same as it was
under the act of 1874 and the amendment thereto passed in

1895. Section 9 now appears in the Revised Statutes as containing the provision of 1874, and also the provision of 1895. (*Vide* 2 Starr & Curt. Ann. Stat.—2d ed.—p. 2665).

*First*—It is first contended on the part of the appellant that the amendment of said section 9, as passed in 1895, is unconstitutional. The provision of the constitution, which it is said to contravene, is that part of section 13 of article 4 of the constitution of 1870, which reads as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 125).

The position of counsel for appellant is, that section 9, as passed in 1874, simply required the conservator to pay and deliver over to those entitled thereto all money, estate and title papers in his hands as conservator, or with which he was chargeable as such, in such manner as should be directed by order or decree of court at the expiration of his trust. The section, as it thus originally stood in 1874, does not designate when the trust of the conservator shall terminate, but other sections of chapter 86 refer to the determination of the trust by removal, resignation or death. It is said that, inasmuch as the original section was confined to a simple direction to the conservator to turn over the property in his possession as the court should direct, the subject matter of the amendment to the section cannot be regarded as germane to the duty of so turning over the property in his possession, as directed by the section before it was amended. Therefore, it is insisted that the amendment specifies other matter than that which is contained in the title. In other words, the original section is said to confer upon the conservator the sole duty of turning over the property in his possession, while the amendment confers on the conservator the powers and duties of administration in addition to such duty. The power to make final settlement and distribution of the estate of the deceased ward without further letters of administration in such time and manner as is required by law of the adminis-

trators of the estates of deceased persons, as conferred by the amendment, is said to be not germane to the duty conferred by the original section, and, therefore, not to be embraced within the title of the act, which is "An act to amend section 9 of chapter 86 of an act entitled 'An act to revise the law in relation to idiots, lunatics, drunkards and spendthrifts,' approved March 26, 1874," etc. In support of the contention of the appellant the case of *Dolese* v. *Pierce,* 124 Ill. 140, is referred to. In that case, the amendatory act under consideration was an act entitled "An act to amend sections 2, 4, 6, 7, 10, 11 and 12 of article 3, of an act entitled 'An act to revise the law in relation to township organization,' approved and in force March 4, 1874." The act, after providing that the county board of each county should have full power and jurisdiction to unite two or more contiguous towns into one, added a proviso that "where said town, to which such territory is annexed, is wholly within the limits of an incorporated city, the limits of said city shall thereupon be extended to include the territory annexed to such town." In that case the amendatory act was held to be in violation of section 13 of article 4 of the State constitution because, in attempting to amend an act to revise the law in relation to townships, it sought to change the boundaries of cities and incorporated villages, and, therefore, embraced more than one subject. The decision of the court there was that the amendatory act assumed to provide for a change in the boundaries of cities and villages, and, as that subject was not embraced in the title of the act, it was in violation of section 13 of article 4 of the constitution. It was there said that townships on the one side and cities and villages on the other were in law and fact as distinct from one another as any two artificial beings could be.

The case of *Dolese* v. *Pierce, supra,* has, however, no application to the case at bar. We see no reason why the matter, contained in the amendment of 1895 to section 9 of chapter 86, cannot be regarded as germane to the subject

matter contained in the original section 9 as it stood in 1874. The amendment merely provided that, where the insane person should die, the conservator should proceed to make final settlement of his estate without further letters of administration, and in such manner as was required by law of administrators. The original section stated what the conservator was to do at the expiration of his trust, and the amendment simply provided that, at the death of the ward, that trust should continue, until the ward's estate should be settled in the same way, in which the estates of other deceased persons are settled, and without new letters of administration. The amendment had relation to the duties of the conservator just as the original part of the section had relation to such duties. In *Dolese* v. *Pierce, supra,* it was said (p. 146): "It is clear that the scope of the act of 1887 is limited by the subject matter contained in the amended sections before amendment, for to introduce any new substantive matter not germane or pertinent to that contained in the original sections, could, in no proper sense, be regarded as an amendment of them, but would manifestly be additional, independent legislation upon a matter not embraced in the title of the act, and consequently void. The amendment of an act in general, or of a particular section of an act, *ex vi termini,* implies merely a change of its provisions upon the same subject, to which the act or section relates." As the title of the act of 1874 is included in and constitutes a part of the title of the amendatory act of 1895, it follows that both acts relate to the same general subject of "idiots, lunatics, drunkards and spendthrifts." The amendatory provision tends to promote the object and purpose of the original section 9 and of the act to which it belongs. Such amendment introduces no new subject matter into the act, and is not obnoxious to the constitutional provision in question. The provision of the constitution, requiring acts of the legislature to embrace in their titles but one subject which shall be expressed in the title, is complied with where the general object of an act has been expressed.

"The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." (*Arms* v. *Ayer,* 192 Ill. 601). In *Arms* v. *Ayer, supra,* where the title of an act was "An act relating to fire escapes for buildings," it was held that such title was sufficient to cover provisions, which imposed duties upon inspectors of factories, upon the grand jury, upon the sheriff, and upon the circuit courts and criminal courts, and also provisions prescribing a penalty for violating the act.

In *Morrison* v. *People,* 196 Ill. 454, this court said (p. 461) : "The act in question [Civil Service act], was passed in the form of an amendment to section 61 of an act entitled, 'An act to revise the law in relation to counties.' * * * The amendment fairly falls within the subject matter of the original act and is germane to the general subject expressed in its title, which is all that is required by the constitutional provision above quoted." (See also *Meul* v. *People,* 198 Ill. 258). In *People* v. *Blue Mountain Joe,* 129 Ill. 370, this court said (p. 376) : "It has been uniformly held by this court that, if the subject of the act be expressed in the title in general terms, it will be sufficient, under the provision of the constitution quoted. * * * The general purpose of this provision of the constitution is accomplished when the title is comprehensive enough to reasonably include as falling within that general subject, and as subordinate branches thereof, the several objects which the statute assumes to effect. * * * If, therefore, the subject matter of the section under consideration is germane to the general subject expressed in the title, or forms a subordinate branch or part of such general subject, it must be held as embraced within the title of the act." We are unable to see why a provision, which gives the conservator power to administer

upon, and settle up, the estate of his deceased ward who is
an idiot, a lunatic, drunkard or spendthrift, is not germane to
the general subject of the law in relation to idiots, lunatics,
drunkards and spendthrifts.  Even if the amendment to said
section 9 should be held to have the effect of amending the
Administration act, it is yet true that a statute need not ex-
press in its title the fact, that it impliedly amends another
statute, or even repeals another statute.  (*Timm* v. *Harrison,*
109 Ill. 593).  In other words, section 13 of article 4 of the
constitution, providing that no act shall embrace more than
one subject, which shall be expressed in its title, does not
require a repeal by implication of another statute to be so
expressed.  (*Geisen* v. *Heiderich,* 104 Ill. 537).

For the reasons above stated, we are of the opinion that
the amendment to section 9 of chapter 86 is not unconsti-
tutional.

*Second*—Counsel for the appellant contends, in the sec-
ond place, that even if the amendment in question is held to
be constitutional, it cannot be regarded as repealing sections 1
and 18 of the Administration act, and that, as these sections
give to the next of kin the right to nominate the adminis-
trator of the estate, where the executor named in the will is
dead, the prayer of appellant's petition to nominate the ad-
ministrator of the estate here in controversy should have
been granted.

It is true, that section 18 authorizes the court to grant
letters of administration to some competent person, who may
be nominated to the court by the next of kin.  The provision
of the amendment to section 9 provides that, where a ward,
who is insane, etc., dies, and there is a conservator of his
estate at the time of his death, such conservator may proceed
to make final settlement of the estate without taking out let-
ters of administration, in the same way as the ordinary ad-
ministrator of any estate might do.  It must be admitted
that this amendment to section 9 does create an exception to
the general provision in section 18 of the Administration act,

that the next of kin, or some person nominated by the next of kin, may administer upon the estate of a deceased person. There is no express repeal of any portion of the administration act upon this subject by the terms of the amendment to section 9. Repeals by implication are not favored in the law. But where a subsequent statute is repugnant to a former statute, or inconsistent with it, a repeal of the latter by the former will be implied, or if a repeal is not implied, a modification or exception will be regarded as grafted upon the first statute by the second one. It has been said that where a later statute modifies or creates an exception to an earlier one, the inconsistency between the two statutes is seeming only. In American and English Encyclopedia of Law, (vol. 26,—2d ed.—p. 729,) it is said: "Another instance, in which an inconsistency between two statutes is seeming only and not real, is where the later one can be construed as a modification of or exception to the earlier one." Here, the amendment to section 9 of chapter 86 may be regarded as an exception to the rule laid down in section 18 of the Administration act. The general rule is, as laid down by section 18, that the next of kin, or some person nominated by the next of kin, may be appointed administrator. But, in case of the death of an idiot, lunatic, drunkard or spendthrift, whose estate is under the control of a conservator, the administration may be continued by the conservator instead of being imposed upon the next of kin. "The repeal of an existing law, by implication, is not favored, and it is a familiar rule in the construction of statutes, that the repugnance between statutes must be so clear and plain that they cannot be reconciled, to justify a resort to this doctrine." (*City of East St. Louis* v. *Maxwell,* 99 Ill. 439).

In *Holton* v. *Daly,* 106 Ill. 131, it was said (p. 139): "It is a familiar doctrine that repeals by implication are not favored, and that the earliest statute continues in force, unless the two acts are clearly inconsistent with, and repugnant to, each other, or unless in the later statute some express

notice is taken of the former, plainly indicating an intention to repeal it." (See also *Town of Ottawa* v. *County of La-Salle,* 12 Ill. 339). In 26 American and English Encyclopedia of Law, (2d ed. p. 744,) it is said: "Where a special act refers to or incorporates a general one, the provisions of the special act will prevail over those of the general one conflicting therewith." The amendment of said section 9 expressly refers to the Administration act, when it confers upon the conservator power, under the letters issued to him as conservator, to make settlement of the estate of his deceased ward "without further letters of administration in such time and manner as is required by law of administrators of the estate of deceased persons: *Provided,* this shall not apply to non-resident conservators." The words, "in such time and manner as is required by law of administrators of the estate of deceased persons," are an express reference to the Administration act, and plainly indicate the intention of the legislature to make an exception to the provisions of that act, so far as the administration of the estates of deceased insane wards is concerned. Section 18 of the Administration act provides, that no non-resident shall be appointed administrator, and it was evidently the intention of the amendment to said section 9 to conform to the spirit of the Administration act by the enactment of the provision that said section 9 should not apply to non-resident conservators.

It is also held by the authorities that "a general act will be repealed *pro tanto* by a subsequent special act when the two acts cannot stand together." (26 Am. & Eng. Ency. of Law,—2d ed.—p. 743). The amendment to said section 9 is a special act or provision, and necessarily repeals *pro tanto* the provision of section 18 of the general Administration law, which provides for administration by the next of kin, or a person nominated by the next of kin.

In view of the considerations thus presented, we are of the opinion that, whether the amendment of 1895 to section 9 of the act of 1874 be regarded as a modification of sections

1 and 18 of the Administration act, or as creating an exception thereto, or as operating as a repeal, *pro tanto,* thereof, said amendment is a valid law, and is in force as to the circumstances and class of persons to which it applies. It follows that the county court committed no error in dismissing appellant's petition, and sustaining the appellee's objections thereto.

Consequently, the order or judgment of the county court is affirmed.                               *Judgment affirmed.*