**The People of the State of Illinois for use of Chicago Title and Trust Company, Administrator, Appellant, v. Henry Harms and Wilhelm Ross, Appellees.**

### Gen. No. 19,209.

1. INSANE PERSON, § 31*—*liability of sureties on conservator's bond for performance of duties in administering ward's estate.* Sureties on the bond of a conservator are liable for the faithful performance by the conservator of the new duties imposed upon him by the amendment of 1895 to section 9, chap. 86, R. S., J. & A. ¶ 7293, authorizing a conservator on death of his ward to administer the estate without further letters of administration.

2. INSANE PERSON, § 28*—*effect of statute authorizing conservator*

*to administer ward's estate.* Amendment of 1895 to section 9, chap. 86, R. S., J. & A. ¶ 7293, authorizing a conservator on death of his ward to make final settlement and distribution of the estate without further letters of administration, *held* not to create a new office but to simply provide for the performance by the conservator of certain new duties.

3. OFFICIAL BONDS, § 44*—*when sureties not discharged by change of principal's duty by subsequent laws.* A surety on an official bond is not discharged by subsequent laws that change or add to the duties of the office to which the bond relates, so long as the imposed duties are fairly appropriate and germane to the office; and the fact that the subsequent legislation tends to greatly increase the duties of the office will not change the responsibility of the surety, so long as the new duties are of the same kind as those that pertained to the office at the time of the signing of the bond.

4. OFFICIAL BONDS, § 44*—*when new duties imposed by statute on conservator are germane to the office.* The new duties imposed upon a conservator by the amendment of 1895 to section 9, chap. 86, R. S., J. & A. ¶ 7293, *held* fairly appropriate and germane to the office of conservator and not to essentially change the nature and character of the office so that sureties on the official bond of the conservator would not be liable for the faithful performance by the conservator of such additional duties.

Appeal from the Circuit Court of Cook county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded. Opinion filed May 21, 1914.

**Statement by the Court.** This is an action of debt, brought in the name of the People of the State of Illinois for the use of the Chicago Title and Trust Company, administrator *de bonis non* of the estate of George W. Savage, deceased, appellant (hereinafter called the plaintiff) against the appellees, Henry Harms and Wilhelm Ross (hereinafter called the defendants), as sureties upon the bond of Millard F. Riggle, as conservator of the estate of George W. Savage, a distracted person.

To an amended declaration filed, the defendants, on October 13, 1910, filed sundry pleas. A stipulation was then entered into between the parties and an order was then entered making the stipulation a part of the record, whereby, in order to simplify the plead-

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

ings, it was stipulated that the plaintiff should have the right to introduce, under the pleadings as they then stood, any and all such competent evidence to maintain the action on said bond as could or might be introduced under any proper pleadings which plaintiff might have filed in such action, and that the defendants, under such stipulation, should have the right to introduce, under the pleadings as they then stood, any and all such competent evidence to maintain their respective defenses as they could or might have introduced under any proper pleadings which they could or might have filed to such action. The bond in question is the bond of Millard F. Riggle, given as conservator of the estate of George W. Savage, a distracted person, and is signed by the defendants, Harms and Ross, as sureties. It bears date January 11, 1889, the date of Riggle's appointment as such conservator, and is in the penal sum of $25,000. It is an ordinary conservator's bond, conditioned, among other things, as follows: "And pay over and deliver all the estate, title papers and effects remaining in his hands, or due from him on such settlement, to the person or persons lawfully entitled thereto." Riggle continued to act as conservator from the date of his appointment until the death of Savage, which occurred on December 18, 1899, during which time Riggle filed from time to time his annual accounts as such conservator. The last of said accounts filed by him prior to the death of Savage was filed December 11, 1899, at which time he admitted having a balance on hand of $250.95. Three days prior to the death of Savage, on December 15, 1899, Riggle, as conservator, consummated a sale of real estate and received therefor the sum of $2,032. On August 4, 1902, Riggle filed in the Probate Court of Cook county an account covering the period from December 11, 1899, the date of his last annual account, to December 18, 1899, the date of Savage's death, in which account he charged himself with the sum of $250.95, balance on hand at date of his last account, and also with the said

sum of $2,032. He credited himself with certain moneys paid for insurance, cost and expenses of sale of real estate, etc., amounting in all to $119.20, leaving a net balance in his hands on the date of Savage's death of $2,163.75.

On January 14, 1903, an order was entered by the Probate Court, in which it is recited that Riggle, conservator, presented his final account with his ward (filed August 4, 1902) showing a balance due the Ward's estate of $2,163.75, and ordering that said account be approved and recorded and that said conservator be discharged. The order further recited "that said conservator, Millard F. Riggle, who is now acting as administrator of said deceased ward's estate, file herein an inventory as such administrator within five days from this date." On October 17, 1902, Riggle, "conservator acting as administrator," filed in the Probate Court an inventory of the real and personal estate belonging to the estate of Savage, in which Riggle charges himself, as "conservator acting as administrator," with said sum of $2,163.75; also with goods and chattels to the value of $108.75.

On February 2, 1903, an order was entered in the Probate Court approving said inventory of Riggle, "conservator acting as administrator," and ordering the same recorded. On October 30, 1907, Riggle, "conservator acting as administrator of the estate of George W. Savage, deceased," filed in the Probate Court an account in which he charges himself, as "conservator acting as administrator," with said sum of $2,163.75, and credits himself with certain moneys paid out for funeral expenses of the deceased, widow's award and other items amounting in all to $1,491, the account showing a balance on hand of $867.86. This account is sworn to by Riggle and is the last one filed by him.

Riggle, "conservator acting as administrator," upon the death of Savage, proceeded to administer upon the estate of Savage. He caused the goods and

chattels to be appraised, the widow's award to be fixed, attended to the payment of the funeral expenses of the deceased, paid the widow's award and certain claims against the estate, and was still in office at the, time of his death, August 20, 1908.

The case was submitted to the court without a jury. The court found the issues for the defendants and entered judgment against the plaintiff for costs, from which finding and judgment the plaintiff has perfected this appeal.

DENT & JACKSON, for appellant.

GAIL E. DEMING and JULIUS H. GEWEKE, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

It is admitted that Millard F. Riggle, at the time of his death, had in his possession a considerable sum of money belonging to the estate of George W. Savage, a distracted person, and that said sum of money has not been paid and delivered over to those entitled thereto. The position of the defendants, who are the sureties of Riggle as conservator of said estate, is, that when Riggle, the conservator (under the amendment to section 9, chapter 86, R. S., J. & A. ¶ 7293), assumed the duties of administering on the estate of his deceased ward, he then had in his possession all of the moneys of the said ward for which he could be justly chargeable at that time, and that they, the sureties, are not responsible under the law for the conduct of Riggle after he assumed the said administration duties. The plaintiff contends that the sureties are bound by the conduct of Riggle after he assumed the said duties. The trial court held with the defendants in their construction of the law and entered a finding and judgment in their favor, and the plaintiff has prosecuted this appeal to reverse this

judgment. The trial court found from the evidence introduced that Riggle, at the time he assumed the said administration duties, then had in his possession all of the funds of the estate for which he could be justly chargeable at that time, and that the moneys now due and owing from Riggle to the estate were converted by Riggle after he had assumed the said administration duties. The plaintiff strenuously contends that the evidence proves conclusively that Riggle converted the moneys that he now owes the estate, prior to the time that he assumed the said administration duties. In the view that we have taken of this case, it will not be necessary for us to pass upon this contention of the plaintiff.

At the time the defendants signed the bond of Riggle, viz.: January 11, 1889, section 9, chapter 86, R. S. (J. & A. ¶ 7293), entitled 'Lunatics, Idiots, Drunkards and Spendthrifts,'' provided as follows:

''Such conservator shall, at the expiration of his trust, pay and deliver to those entitled thereto all the money, estate and title papers in his hands as conservator, or with which he is chargeable as such, in such manner as shall be directed by the order or decree of any court having jurisdiction thereof.''

On January 7, 1895, the legislature amended this section by adding thereto the following:

''Whenever any lunatic, idiot, drunkard or spendthrift shall die, seized or possessed of any real or personal estate, then such conservator shall have full power and authority under the letters issued to him or her to make final settlement and distribution of the estate of said deceased ward without further letters of administration, in such time and manner as is required by law of administrators of the estate of deceased persons: *Provided,* this shall not apply to non-resident conservators.''

The defendants contend that by virtue of this amendment to section 9, Riggle, on the death of Savage, December 18, 1899, became ''conservator acting as administrator'' of his deceased ward's estate, and

that thereupon it became his duty as conservator to at once turn over to himself as "conservator acting as administrator," all moneys and properties belonging to said estate that were then in his hands as conservator, and that he performed this duty, and that the sureties on his bond as conservator were then and thereby absolved from responsibility for his future conduct. The plaintiff contends that the amendment in question simply provides that at the death of a ward the office of conservator shall continue until the ward's estate is settled in the same way in which the estates of other deceased persons are settled and without letters of administration. In other words, the defendants contend that the amendment to section 9 created a new office for the conservator on the death of his ward, while on the other hand the plaintiff contends that the amendment simply provided for a continuation of the original trust with certain additional duties attached thereto. If a new and independent office was created by the amendment it will be, of course, conceded that the defendants were not responsible for the conduct of Riggle in his administration of the new office.

In the case of *Lang v. Friesenecker*, 213 Ill. 598, the Supreme Court had occasion to consider the meaning and intent of section 9 of chapter 86 as approved March 26, 1874, and also the 1895 amendment to the same. We quote from the opinion of the court (italics ours):

"We see no reason why the matter, contained in the amendment of 1895 to section 9 of chapter 86, cannot be regarded as germane to the subject matter contained in the original section 9 as it stood in 1874. The amendment merely provided that, where the insane person should die, the conservator should proceed to make final settlement of his estate without further letters of administration, and in such manner as was required by law of administrators. The original section stated what the conservator was to do at the expiration of his trust, and the amendment simply

provided that, at the death of the ward, *that trust should continue* until the ward's estate should be settled in the same way in which the estates of other deceased persons are settled, and without new letters of administration. *The amendment had relation to the duties of the conservator just as the original part of the section had relation to such duties."*

It will be noted as a circumstance tending strongly to support the contention that the legislature did not intend, by the amendment, to create a new office, that the amendment does not provide for the giving of a bond by the conservator after the death of the ward. The defendants argue that this was an oversight on the part of the legislature. We cannot indulge in any such presumption. Neither can we presume that the legislature intended that on the death of a distracted person, the moneys and the personal property of the said person should pass from the hands of his conservator, under bonds, to the hands of another official, not under bonds.

In support of their position that Riggle had two offices, conservator and "conservator acting as administrator," and that the sureties on his bond as conservator are not responsible for his conduct while acting in the position of "conservator acting as administrator," the defendants cite certain cases, the more important of which we will now notice.

In the case of *Bell v. People,* 94 Ill. 230, Jackson Frick was administrator of the estate of James Evans, deceased, and he was also guardian of Mary E. Evans, the daughter of the said deceased, and his sole heir. A bond for each office was given but with different sets of sureties. Frick died, and he then owed, either as said administrator or said guardian, the sum of $5,797.14. The Supreme Court held that, under the facts in the case, Frick owed the amount as guardian and that therefore the sureties on his bond as guardian were responsible for the said amount.

In the case of *People v. Huffman,* 182 Ill. 390, the court held, that "where one is appointed to an office,

such as executor, administrator or guardian, as to which certain duties are prescribed by statute and for the performance of which he is required to give a bond with security, it is a general rule that when that officer is further required to discharge official duties which are special in their nature and for the faithful performance of which he is required to give a special bond, in the absence of any declaration in or provision of a statute that the general bondsmen shall be liable for the faithful discharge of the special duty no liability can be held to attach for which they would be liable on their general bond." In this case, one Joseph Wilson was appointed executor of the last will of Isaac Wilson, and he gave a bond as such executor. Subsequently it became necessary under the will for the executor to sell certain real estate belonging to the estate. The statute requires that a special bond be given by the executor when real estate is to be sold. The court held that the executor in the matter of the sale of the real estate was not discharging a duty as executor but a duty as trustee under the will, and that the sureties of the executor under the bond given by him when he was appointed to said position were not liable for the conduct of the executor acting as trustee in the matter of the sale of the real estate.

In the case of *Weir v. People*, 78 Ill. 192, it appears that one Jacob Bitzer, Jr., died intestate, leaving personal property, and one Krafft was appointed administrator of the estate and gave his bond in the usual form. The sole heir of the intestate was his father, Jacob Bitzer, Sr., who, after the death of the son, also died leaving a last will and testament, and appointing the said Krafft executor. Krafft qualified and acted as such. He gave a bond for this office with sureties different from those that had signed his bond as administrator. No account was ever rendered by Krafft of his acts and doings as administrator of the estate of Jacob Bitzer, Jr. The question for the court to decide

was whether, under the facts of the case, the sureties on the administrator's bond were responsible for the payment of the residuary part of the personal estate of Jacob Bitzer, Jr., to the legatees under the will of Jacob Bitzer, Sr. That case, like that of *Bell v. People, supra,* and *People v. Huffman, supra,* presents a case of one individual holding two separate and distinct offices with separate sureties for each office, and none of these cases, in our opinion, is in point.

The counsel for the defendants admit that "it is undoubtedly true that any person becoming surety on a conservator's bond, since the amendment of 1895 went into effect, would be liable for the acts of his principal, after the death of his ward and while he was acting as administrator." It seems to us that this statement of the counsel is, in effect, an admission that the amendment did not create a new office, but only added certain new and additional duties to the office of conservator. After a careful consideration of the question, we have reached the conclusion that the amendment to section 9 did not create a new office, and that it simply provided for the performance by the conservator of certain new duties. In our judgment, the language of the amendment will permit of no other reasonable conclusion.

The defendants further contend that (assuming that the amendment did not create a new office) their undertaking was that of sureties, under the law as it existed at the time of the making of the instrument, and that this undertaking or contract could not be changed by any subsequent act of the legislature, and that the amendment to section 9 increased the duties and extended the term of the conservator, and that consequently they are not bound under their obligation for any conduct of Riggle occurring after he commenced his duties under said amendment.

It must be borne in mind that the duties of a conservator are not assigned or regulated by contract, but by law. The conservator occupies a public office and the bond given by him is an official bond. Chap-

ter 103, Hurd's R. S. (J. & A. ¶¶ 7884 *et seq.*) As between private parties, the law is that any alteration in the obligation or contract, in respect of which a person has become a surety, without the consent of the latter, extinguishes his obligation and discharges him. The reason for this rule is that the surety has never made the contract upon which it is sought to charge him, the alteration in the contract having been made without his consent. The defendants are contending that the same rule is applicable to official bonds.

"In the absence of express provisions in the bond to the contrary, a surety at the time of executing an official bond is presumed to contemplate subsequent changes and additions in the duties of the office to which the bond relates which do not essentially change the nature and character of the office, and to contract with reference to such changes and additions. But he is not presumed to contract with reference to subsequently imposed duties which are not fairly appropriate and germane to the office unless the words of his undertaking or the law in force at its date by a fair and reasonable construction bring such duties within its provisions." *Am. & Eng. Ency. of Law,* Vol. 27, p. 542.

"The sureties of an officer upon his official bond are liable for the faithful performance of all duties imposed upon such officer, whether by laws enacted previous or subsequent to the execution of the bond, which properly belong to and come within the scope of the particular office, and not for those which have no connection with it, and cannot be presumed to have entered into the contemplation of the parties, at the time the bond was executed." *Governor v. Ridgway,* 12 Ill. 19; *Compher v. People,* 12 Ill. 290; *Smith v. Peoria County,* 59 Ill. 425; *Ramsay's Estate v. People,* 197 Ill. 585; *People v. Vilas,* 36 N. Y. 459. "If the sureties in the official bonds of persons holding offices created by laws, were to be discharged by every change of the laws relating to their duties, it would in these days of ever frequent change be to little pur-

pose to trouble the officers to obtain sureties." *Governor v. Ridgeway, supra*, p. 18.

The legislature has the power, at any and all times, to change the duties of officers, and the continued existence of this power is known to the officer and his sureties. A legislative alteration of the duties of an officer do not discharge his sureties, so long as the duties remain appropriate to the office. *People v. Vilas*, 36 N. Y. 461-464.

Almost innumerable authorities might be cited in support of the proposition that the surety on an official bond is not discharged by subsequent laws that change or add to the duties of the office to which the bond relates, so long as the imposed duties are fairly appropriate and germane to the office; and the fact that the subsequent legislation tends to greatly increase the duties of the office will not change the responsibility of the surety, so long as the duties imposed are those of the same nature or kind as those that pertained to the office at the time of the signing of the bond.

The important question to determine in this case is, did the amendment to section 9 impose duties upon the conservator that were not fairly appropriate and germane to the office? Counsel for the defendants contend that it did. In support of this contention, a number of cases are cited. We will briefly refer to the more important of these.

In the case of *Governor v. Lagow*, 43 Ill. 134, certain persons were appointed by an act of the legislature, assignees, to wind up the affairs of the Bank of Illinois at Shawneetown, and *they were allowed by the act four years in which to discharge the duties assigned them*. The legislature afterwards, and without the consent of the assignees' sureties, extended the time for the winding up of the affairs of the bank two years. The court in its decision held that as the sureties had only undertaken to be responsible for the acts of the assignees for a period of four years, they could not be held liable for the acts of their prin-

cipals during the period of the extended time. The case of *People v. Toomey,* 122 Ill. 308, and several other like cases cited by counsel for the defendants (but not specifically referred to by us), are similar in principle to the last mentioned case. The defendants in the present case became sureties for the conservator, not for a definite period of time, but for the life of the conservatorship, having the right to withdraw from the bond in the manner prescribed by statute. At the time they signed the bond it was, of course, impossible to tell what the duration of the life of the conservatorship would be. The court, in the case of *Governor v. Lagow, supra,* takes occasion to reaffirm the doctrine announced in the case of *Governor v. Ridgway, supra.* Counsel for the defendants cite the case of *People v. Tompkins,* 74 Ill. 482. In that case the sureties signed the official bond of a State grain inspector. At the time of the signing of the bond it was not the duty of the inspector to collect and take care of any moneys. After the signing of the bond the duty of collecting and taking care of certain fees was imposed by law upon the inspector. The Supreme Court held that when the sureties signed the bond of the inspector they had no reason to anticipate that he would thereafter be given by law the power of collecting and controlling moneys, and that therefore "it follows it cannot be held within the contemplation of the parties in executing the bond that they were assuming any liability on that account." In the present case, the conservator had the right to collect moneys; in fact all the moneys that came into the possession of Riggle were received by him prior to the death of his ward.

We have carefully considered all of the cases cited by the counsel for the defendants in support of their contention that the duties imposed upon the conservator by the amendment to section 9 were not fairly appropriate and germane to the office, and in our judgment none of the cases cited support the contention of counsel.

It is clear from a reading of the amendment to section 9 that the legislature intended, by that act, to merely continue the office of conservator. It is also apparent that the lawmakers of the State were of the opinion that the additional duties imposed upon the conservator by the amendment were fairly appropriate and germane to the office, else they would have provided for the giving of a new bond by the conservator before he commenced upon the duties imposed upon him by the amendment. In this connection it must be borne in mind that, no matter how varied or onerous the new duties imposed upon the conservator by the amendment may be, the sureties will not be discharged from further responsibility for the acts of the said official, provided the new duties are fairly appropriate and germane to the office. To excuse the sureties, the new duties must essentially change the nature and character of the office.

The office of a conservator, under our laws, is a most important one. Some idea of its numerous and varied duties and the fiduciary character of the position may be gathered from a reading of chapter 86, Hurd's R. S., J. & A. ¶¶ 7246 *et seq.* The duties of a conservator, when he administers upon the estate of his deceased ward, under the amendment to section 9, are of a very much more restricted kind. As conservator, before the death of his ward, it is his duty to maintain and keep up the interests of his ward; in a certain sense, he stands in the shoes of his ward. After the death of the ward it is his duty, under the amendment, to close up the estate and to account to the proper parties for his stewardship. The amendment puts no additional estate into the hands of a conservator; it merely gives him the additional power to close up an estate that he already has the possession and control of. The same court has jurisdiction of the conservator before and after the death of his ward. Counsel for the defendants urge that the amendment increases the life of the office. Under the

law, prior to the amendment in question, the conservator was required at the expiration of his trust to "pay and deliver to those entitled thereto all the moneys, estate and title papers in his hands as conservator, or with which he is chargeable as such, *in such manner as shall be directed by the order or decree of any court having jurisdiction thereof.*" It will be noticed that no definite time is fixed in which the conservator is to pay and deliver over. Prior to the amendment in question, in case a contest arose as to who had the right to administer on the estate of a deceased ward, the office of the conservator might have been continued indefinitely. The conservator, upon the death of his ward, and during the said contest, could not abandon the estate, but it would be his duty to take care of it until he was ordered by the court to deliver it up to those entitled to it. It has been determined by our Supreme Court in the case of *Lang v. Friesenecker, supra,* that the amendment to section 9 gives the conservator of an insane or distracted person the first right to administer the estate of his deceased ward. The amendment, therefore, tends to fix more definitely the possible life of the conservatorship. While the case of *Lang v. Friesenecker, supra,* does not control the question as to whether the duties imposed by the amendment were fairly appropriate and germane to the office, it has some bearing on the question. In that case, the appellants contended that the amendment to section 9 was unconstitutional, for the reason that it contravened that part of section 13 of article 4 of the Constitution of 1870, which reads as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The position of the appellants was that the amendment to section 9 conferred duties upon the conservator that were not germane to the duties imposed by the original section. The Supreme Court held that the duties conferred upon the conservator by the amendment had relation to the duties of the office of a conservator, and that

the matter contained in the amendment was germane to the subject-matter of the original section.

Counsel for the defendants insist that the conservator, Riggle, after the death of his ward, filed a just and true account in the Probate Court, as "conservator acting as administrator," in which account he charged himself, as "conservator acting as administrator," with all the funds belonging to the ward, and that the Probate Court approved this account, and that thereby (counsel contend) the sureties on his bond were released from any liability for the future acts of Riggle. We cannot subscribe to this contention. Assuming that Riggle intended, by his said conduct in filing the account in question, to assume the duties of a new office, nevertheless, we hold that his said action and the action of the court in approving said account did not have the legal effect of creating a new office; nor did it have the effect of releasing the sureties from responsibility for the future conduct of Riggle. It would be unreasonable to hold that the mere act of the conservator in charging himself, as "conservator acting as administrator," with the money chargeable against him as conservator would effect a discharge of the sureties in this case, nor can we hold that the action of the court in approving the said account would produce such a result. As the legislature did not intend by the amendment to create a new office on the death of the ward, the said action of Riggle and the said action of the court cannot produce a result contrary to the intent of the amendment. We hold that the account in question amounted to no more than an account of Riggle as conservator.

As was said by Mr. Justice Trumbull in the case of *Governor v. Ridgway, supra,* it is not the policy of the law to allow sureties in the official bonds of persons holding offices created by law to be discharged by every change of the laws relating to the duties of these officials. Many of the states have passed statutes

to the effect that every official bond is obligatory upon the principal and sureties thereof for the faithful discharge of any duties which may be required of such official, by any law passed subsequently to the execution of such bond, although no such condition is expressed in the bond. Many of the upper courts have held that the sureties in official bonds must take cognizance of the fact that the ever changing circumstances of the country require legislative action, modifying and changing from time to time the duties of public officers. Nor can it be said that such a rule is a serious peril to sureties on the bonds of public officials in this State. Under section 10, chapter 103, Hurd's R. S. (J. & A. ¶ 7893), whenever a surety upon the official bond of any public officer desires to be released from such bond, he may speedily do so by taking a few simple steps to bring about this result. At the time the sureties on the bond in the present case signed the instrument, section 15 of chapter 103, Hurd's R. S. (J. & A. ¶ 7901), was in full force and effect. By this section a surety on the bond of a conservator is given the right, at any time, to be released from any further liability upon such bond. The amendment to section 9 was passed June 7, 1895, but was not in force and effect until July 1, 1895. The defendants in this case are presumed to know of the passage of this act. It clearly apprised them that new duties had been imposed upon conservators, and that an additional or new bond was not required of a conservator for the faithful performance of these new duties. The sureties in the present case allowed the conservator to perform the new duties and they did not see fit to exercise their right to withdraw from the bond. Riggle continued to act as conservator until his death, August 20, 1908. In view of all the circumstances, can it be fairly said that the duties imposed upon the conservator by the amendment were imposed without the knowledge and consent of the sureties?

After a full and careful consideration of the ques-

tion, we have arrived at the conclusion that the duties imposed upon the conservator by the amendment to section 9 were fairly appropriate and germane to the office of a conservator and that they did not "essentially change the nature and character of the office." It is admitted that Riggle did not pay and deliver to those entitled thereto all the moneys in his hands belonging to the estate of Savage, deceased. The sole defense of the defendants in the lower court was that Riggle at the time he assumed the duties imposed upon him by the amendment had in his hands all the moneys belonging to the estate of his deceased ward, and that this fact absolved the sureties on his bond from responsibility for his future conduct. The trial court adopted this view of the law and entered judgment for the defendants. In this he erred. We are satisfied that, under the law and the admitted facts in the case, the defendants are responsible to the plaintiff for whatever sum the said Riggle may be indebted to the estate of Savage, deceased.

The judgment of the Circuit Court of Cook county will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*